448 So.2d 179 (1984)
Thomas W. TUMBLIN, et al.
v.
GRATECH CORPORATION.
No. CA-1227.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1984.
*180 Bruce G. Reed, J.D., Reed & Reed, New Orleans, for plaintiffs-appellants.
Gus A. Fritchie, III, Montgomery, Barnett, Brown & Read, New Orleans, for defendant-appellee.
Before BARRY, AUGUSTINE and CIACCIO, JJ.
BARRY, Judge.
Plaintiffs, four former employees of defendant Gratech Corporation, appeal the dismissal of their suit for wages, vacation pay, penalties and attorney's fees under LSA-R.S. 23:632.
Gratech Corporation, a Houston-based maintenance contractor, had an oral agreement to perform general maintenance for Ryan-Walsh Stevedoring at its bulk terminal in New Orleans for an indefinite period beginning March 15, 1981. Early in March, *181 1981, plaintiffs Thomas Tumblin, George Lee, James Rayford and Darryl Jordan were interviewed and hired by Gratech's local manager, Jack Renger, who told them they would be entitled to two weeks' paid vacation after completion of one year's service.
Three of the plaintiffs testified they started work shortly after March 15, 1981, which was corroborated by Gratech's payroll records. The other plaintiff, Tumblin, said he started on March 1, 1981; however, Gratech's payroll ledger showed he began on March 15, 1981. On or about March 5, 1982, Gratech was informed by Ryan-Walsh that it would handle its own maintenance. Gratech was told to cease operations effective March 5, 1982 and vacate the premises by March 15, 1982.
When plaintiffs reported for work on March 5, 1982, Lee, Rayford and Jordan were told their services were no longer required and each was paid through March 5 in proportion to his semimonthly salary. Plaintiff Tumblin was given the option of continuing to work for Gratech at another location, or staying at the bulk terminal under employment to Ryan-Walsh. Tumblin opted to remain at the terminal (where he had worked for 12 years under various employers) and became general maintenance foreman for Ryan-Walsh. Gratech paid Tumblin through March 5, 1982 and he was subsequently paid by Ryan-Walsh beginning March 6, 1982. Tumblin testified he worked for Gratech 2½ or 3 days from March 6-8, 1982 before he was "released" to work for Ryan-Walsh.
Tumblin alleges Gratech owes wages for those 2-3 days, plus statutory penalties, costs and attorney's fees under R.S. 23:632. All plaintiffs claim they are entitled to two weeks vacation pay, statutory penalties, costs and attorney's fees because Gratech refused to pay timely.
The trial court rejected all claims, finding none of the plaintiffs worked a full year in order to qualify for vacation pay. The court denied Tumblin's claim for 2½ days' wages because Ryan-Walsh's payment to Tumblin for those days discharged any obligation of Gratech to Tumblin.
Plaintiffs first two assignments of error concern evidentiary rulings regarding the admissibility of statements made by Gratech's local manager, Jack Renger. Citing the hearsay rule, the trial court sustained an objection to Renger's alleged statements to the plaintiffs, made when they were discharged, that they would receive vacation paychecks in the mail. The court allowed plaintiffs to proffer the statements.
Plaintiffs' candidly admitted Renger told them when they were hired that they would receive two weeks' vacation if they worked a full year. Any statements made after the employer-employee relationship ended would not have unilaterally and retroactively altered the oral contract under which plaintiffs were hired.
Plaintiffs also complain about statements made by Renger to Gratech's president, Mahoney, over the telephone; however, the trial judge made it clear in his oral ruling that his decision regarding Tumblin's claim for unpaid wages was not based on Mahoney's testimony. Thus, allowing this hearsay testimony was harmless error.
Plaintiffs also assert they were hired for a five-year term and were paid semimonthly; therefore, they are entitled to a full month's salary for March, 1982 when they were involuntarily discharged. That would constitute employment over one year entitling them to vacation pay. Plaintiffs predicate their claim on LSA-C.C. Art. 2749 which provides:
If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time, before that time has expired, he shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived.
A prerequisite for recovery of wages under Art. 2749 is that the employee was hired for a definite term. The record is void of evidence that plaintiffs were *182 hired for any fixed term. An employer who hires an employee without setting a definite term may dismiss the employee at any time, without incurring any liability for future wages. LSA-C.C. Art. 2747. Jackson v. East Baton Rouge Parish School Board, 393 So.2d 243 (La.App. 1st Cir. 1980); Senac v. L.M. Berry Co., 299 So.2d 433 (La.App. 4th Cir.1974).
Likewise, we find no support in the record or in our jurisprudence that a semimonthly salary entitles a worker to a full month's salary after working only a part of the month. In Vanacor v. St. Amant, 379 So.2d 769 (La.App. 4th Cir.1979) this Court held that a monthly-salaried employee, discharged in the middle of a pay period, is entitled to a proportionate share of his salary based upon the ratio of days worked to the number of work days in the month.
Plaintiffs Lee, Rayford and Jordan concede they were paid through their last day with Gratech. They were not hired for a fixed term and were paid in full.
Plaintiff Tumblin testified he began working for Gratech on March 1, 1981 and worked until March 8, 1982. The trial court found that Tumblin may have assisted Renger in interviewing and selecting maintenance personnel prior to March 15, 1981, but Tumblin did not start working until March 15. That finding is supported by Gratech's employment records and Tumblin's payroll receipts.
Tumblin's testimony that he worked 2 or 3 days for Gratech after it ceased operations is contradicted by Gratech's personnel records. Tumblin admitted he remained in the same position and performed the same work for Ryan-Walsh as he did for Gratech, and both employment contracts were informal, oral agreements. It is difficult to determine when the transition took place. The fact that Gratech stopped paying Tumblin as of March 5, 1982 and Ryan-Walsh began paying Tumblin March 6 strongly suggests the change occurred on March 6. The trial judge did not make a definite finding that Tumblin continued to work for Gratech for 3 days after March 5, but ruled that:
With respect to having worked additional three days, he [Tumblin] admitted he received payment from Ryan Walsh. And that the Court finds that this is sufficient under the law to have discharged Graytech from its responsibility to Mr. Tumblin.
Ryan-Walsh's payments to Tumblin for the three days extinguished any obligation of Gratech to pay Tumblin. Under LSA-C.C. Art. 2134, anyone, even a disinterested third party, may discharge a debtor's obligation to a creditor:
An obligation may be discharged by any person concerned in it, such as a coobligor or a surety.
The obligation may even be discharged by a third person no way concerned in it, provided that person act in the name and for the discharge of the debtor, or that, if he act in his own name, he be not subrogated to the rights of the creditor.
The sole reason for Tumblin's employment with Gratech was the sub-contract between Gratech and Ryan-Walsh. Ryan-Walsh thus stood in a position analogous to that of a "statutory employer". Any work performed by Tumblin for Gratech after March 5, 1982 inured to the benefit of Ryan-Walsh. Whether Ryan-Walsh paid Tumblin in Gratech's name or in its own name, the payment discharged any obligation of Gratech without Ryan-Walsh becoming subrogated to any rights of Tumblin against Gratech.
Plaintiff's reliance on the collateral source rule is misplaced. That principle holds that a tortfeasor may not benefit because of his victim's receipt of insurance payments from sources independent of the wrongdoer's procuration or contribution. Hudson v. Thompson, 422 So.2d 640 (La. App. 3d Cir.1982). The rule is based on the insurer's and tortfeasor's obligations being independent of each other; it has no application to this situation where only one employer owes the obligation to the employee. To allow Tumblin to recover from Gratech would unjustly enrich Tumblin at the expense of one or the other of his employers.
*183 The judgment of the district court is affirmed at appellants' costs.
AFFIRMED.