512 So.2d 546 (1987)
Lana MELDER a/k/a Lana M. Willis, Plaintiff-Appellee,
v.
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Defendant-Appellant.
No. 86-678.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1987.
*547 Charles R. Albright, Baton Rouge, for defendant-appellant.
Steven W. Hale of Salter, Streete and Hale, Lake Charles, for plaintiff-appellee.
L. Paul Foreman, of Raggio, Cappel, Lake Charles, for defendant-appellee.
GUIDRY, Judge.
The above numbered and entitled appeal was consolidated with an appeal entitled Melder v. State of Louisiana, Through Department of Highways, 512 So.2d 553 (La.App.3rd Cir.1987). Both appeals arise out of the same suit for damages. By motion of all parties involved, separate trials were held on the issues of liability and damages. The instant matter is the appeal resulting from the liability determination *548 of the trial court and the companion matter concerns the appeal as to damages. We decide all issues presented in both appeals in this opinion but render a separate decree in the companion appeal.
The accident giving rise to these appeals occurred on May 31, 1982, at approximately 10:55 a.m. At that time, plaintiff, Lana Melder Willis, was driving a 1978 Plymouth Fury in the northbound lane of Louisiana Highway 377 in Allen Parish. Willis alleged that, immediately prior to the accident, she encountered a bumpy or wavy section in the highway, which highway defect caused her vehicle to suddenly veer to the left, cross the southbound lane of traffic, pass the edge of the roadway, and eventually strike a large pine tree on the side of the road. As a result of this accident, Willis sustained serious bodily injury and property damage.
Plaintiff filed suit against the State of Louisiana, Through the Department of Transportation and Development (DOTD),[1] based upon the latter's alleged negligence in failing to maintain Highway 377 in a reasonably safe condition and in failing to warn of dangerous roadway conditions. Plaintiff also seeks to impose liability on DOTD under the doctrine of strict liability. DOTD answered the petition, asserting the defenses of contributory negligence, assumption of the risk and victim fault. Liberty Mutual Insurance Company (Liberty), as the worker's compensation insurer of plaintiff's employer, Professional Home Health Services of Allen, Inc. (Home Health), intervened in the suit asserting subrogation rights for the amounts it paid to plaintiff in compensation benefits and medical expenses.
A bench trial was held on November 15, 1985, on the issue of liability. By judgment dated February 14, 1986, the trial judge ruled in favor of plaintiff and intervenor and against defendant, finding the latter liable under theories of negligence (La.C.C. art. 2315) and strict liability (La. C.C. art. 2317). DOTD appeals from this judgment of the trial court.
On May 28, 1986, a separate trial was held on the issue of damages. By judgment dated September 18, 1986, the trial judge awarded damages to plaintiff in the amount of $650,000.00, together with judicial interest and costs. Judgment was also rendered in favor of intervenor, Liberty, ordering payment to it, by preference and priority out of the award to plaintiff, all workers' compensation and medical expenses paid to or on behalf of plaintiff. DOTD perfected a separate appeal urging excessiveness of the damage award.

LIABILITY
In its appeal on the issue of liability, DOTD set forth the following assignments of error:
(1) the trial court erred in finding the section of La. Highway 377 at the accident site to be dangerous and defective;
(2) the trial court erred in finding that DOTD had actual or constructive knowledge of the dangerous and defective condition of La. Highway 377 and, despite this knowledge, failed to take appropriate action to remedy or warn of same;
(3) the trial court erred in failing to find plaintiff guilty of victim fault or contributory negligence; and,
(4) the trial court erred in failing to apply the doctrine of comparative negligence.
DOTD's duty to travelers on state highways under La. C.C. art. 2315 is well settled. DOTD has a duty to construct and maintain the state's highways in a condition reasonably safe for persons using ordinary care and prudence. DOTD is not responsible for every accident which occurs *549 on state highways, nor is it a guarantor of the safety of travelers or an insurer against all injury which may result from obstructions or defects in the highways. DOTD will be held liable, under the provisions of La. C.C. art. 2315, when the evidence shows that the condition complained of presented an unreasonable risk to prudent drivers and DOTD had actual or constructive notice of the defect and failed to correct it within a reasonable time. United States Fidelity and Guaranty Co. v. State of Louisiana, Through the Department of Highways, 339 So.2d 780 (La.1976); Barnes v. Liberty Mutual Insurance Co., 350 So.2d 288 (La.App. 3rd Cir.1977), writs denied, 352 So.2d 238, 239 (La.1977); Usry v. Louisiana Department of Highways, 402 So.2d 240 (La.App. 4th Cir.1981), writs denied, 404 So.2d 1259 (La.1981).
Under a strict liability theory of recovery (La.C.C. art. 2317), a plaintiff must establish that (1) the thing which caused the damage was in the care or custody of the defendant; (2) the thing had a vice or defect which caused an unreasonable risk of injury to another; and, (3) the injury complained of was caused by the vice or defect. Shipp v. City of Alexandria, 395 So.2d 727 (La.1981); Chiasson v. Whitney, 427 So.2d 470 (La.App. 5th Cir.1983), writs denied, 433 So.2d 179, 180, 183 (La.1983).
There is no dispute that La. Highway 377 was and is under the care and custody of defendant. The evidence adduced at trial also clearly establishes that the condition of the roadway, on the day of the accident, was "uneven" at best. Plaintiff produced several witnesses, familiar with that particular stretch of highway, who described the highway as "lumpy", "bumpy", and "like a washboard, ridgy", with the bumps rising from three to six inches above the normal roadway surface. According to all witnesses, this bumpy road condition stretched across the entire northbound lane of traffic and was approximately 15 to 20 feet in length. Plaintiff's witnesses testified that this "washboard" condition had existed over a period of some six months to a year prior to the accident. Several of plaintiff's witnesses stated that, at speeds between 40 to 55 mph, upon reaching this stretch of highway, the undercarriages of their automobiles would scrape the bottom of the roadway. The witnesses also stated that they would drive around this area whenever possible to avoid the uneven road surface, otherwise they would slow down when driving across it.
State Trooper Gerald O. Wright, Jr., who was accepted by the court as an expert in the field of accident investigation, investigated the accident in question. Wright noted on his accident report that the road surface of Highway 377 was uneven and had "bumps" on it. Wright stated that, "[i]t would be a type of wave action on the roadway. No large humps. It was just an uneven surface". Wright did not consider the condition of the roadway as being hazardous. Although Wright conceded that the bumps might affect vehicle control and could have been a contributing factor to the accident, he concluded that the primary cause of the accident was the speed at which plaintiff was travelling, which he estimated at 70 mph. Trooper Wright based this estimate on the length of the skid marks and the amount of damage sustained by the vehicle.[2] However, he conceded under cross-examination that the accepted method for determining the speed of an automobile after an accident necessarily required that the weight of the vehicle be considered in the computation. Wright admitted that he did not consider the weight of plaintiff's vehicle in his computations. Wright did not issue a traffic citation to plaintiff for speeding or any other traffic violation.
Dwayne T. Evans, a traffic engineering consultant and former ten-year employee of the Louisiana Department of Highways, accepted by the court as an expert in the field of traffic engineering, testified on behalf of plaintiff. Evans' testimony was *550 based upon his examination of the accident site on the day of trial (after repair of the highway and some 3½ years post accident) and the photographs taken by Trooper Wright on the date of the accident. Evans opined that the highway condition, as described by plaintiff's lay witnesses, was hazardous and one which required emergency repairs. He observed that any roadway condition which causes a vehicle to "bottom out" could quite likely also cause a person to lose control of his vehicle. From his examination of the photographs taken by Trooper Wright, Evans described the marks left by plaintiff's vehicle on the highway as follows:[3]
"These are yaw marks. They are tire marks left by a tire that is notthe tire itself is not pointed in the direction the vehicle is traveling. It involves rotation of the tire as well as some side slip. It's not like a regular skid mark with locked brakes."
Evans explained that yaw marks are indicative of a vehicle which is out-of-control, as opposed to a vehicle with locked brakes. Evans further stated that by measuring the radius of the yaw marks, a determination could be made of the speed at which the vehicle was traveling. Evans however was not able to make such determination solely from the photographs.
Testifying on behalf of defendant was Royce Lee Bennett, the parish superintendent for DOTD in charge of maintaining La. Highway 377 in Allen Parish. Bennett was the acting parish superintendent at the time of plaintiff's accident. Bennett testified that he drove across Highway 377 approximately one week prior to the accident and described the condition of the highway at that time as being an "uneven surface", consisting of "dips and irregularities". He stated that this "uneven surface" covered the entire northbound lane of Highway 377 and extended a distance of approximately 50 feet. Bennett estimated that this highway condition had existed for at least a couple of months prior to the accident. Bennett stated that he did not consider the condition of the highway such as to warrant emergency repair and simply made a mental note that the condition should be scheduled for routine maintenance repair in the future. Bennett went to the accident site on June 1, 1982, the day after the accident. At that time, Bennett noted that there were minor wavey depressions in the highway, maybe one-half to one inch deep. Bennett again did not feel that such condition warranted emergency action by DOTD. Repair work was accomplished in that area on July 28, 1982. Bennett explained that such was routine repair work whereby the highway surface was machine leveled and then resealed. Bennett also noted that had the repair work been in response to plaintiff's accident, it would have been performed much sooner than two months after the accident. Bennett also stated that his office had never received any complaints about the alleged dangerous condition of Highway 377. He did concede, however, that a roadway surface which caused the undercarriage of a vehicle to scrape bottom would be considered a hazardous condition, warranting emergency repair work.
Edgar J. Brown, an operator with DOTD, also testified on defendant's behalf. Brown stated that he travels over Highway 377 every day as it is near his home. He stated that he has never noticed any defects in the roadway which would have necessitated emergency repair work by the department. Brown did testify, however, that he did not specifically remember the condition of the highway on the date of plaintiff's accident.
Lana Willis testified that she was working as a nurse's aide for Home Health at the time of the accident and was on her way to see a patient, Mr. Pickering, who lived off of Highway 377. Because of the head injuries which she received in the accident, Willis was unable to recount any of the events which took place on the day of the accident. Although she and her family lived only 20 to 25 miles from the *551 accident site, Willis testified that she had driven on Highway 377 only six times prior to the accident, on her way to and from Pickering's home. Willis testified that she did not always leave Pickering's house via Highway 377 north. Depending on the patient she had to see after leaving Pickering, plaintiff stated that she could have continued travelling south on Highway 377. Plaintiff had no specific memory of ever travelling north on Highway 377 prior to the date of the accident.
In support of his ruling on the issue of liability, the trial judge, in his written reasons for judgment, stated as follows:
"Considering all the testimony and evidence of this case, the court is of the opinion that plaintiff has proven that the section of Louisiana Highway 377 on which the accident occurred was dangerous and defective, and accordingly, the defendant is strictly liable for any damages sustained by Lana Willis. The court further finds the defendant had actual knowledge or at the very minimum constructive knowledge of the hazardous roadway condition for a sufficient period of time prior to the accident and negligently failed to remedy this condition or warn Ms. Willis of its existence.
There were no signs to warn a driver of the presence of this dangerous roadway condition. This roadway condition presented an unusually dangerous hazard to the motoring public, and the defendant failed in its duty to post signs warning drivers of it. The failure of the defendant to repair or remedy this dangerously defective roadway condition or at least warn plaintiff of its presence constitutes legal fault upon the part of the defendant. As a direct result of defendant's conduct alone plaintiff lost control of her vehicle.
Accordingly, the defendant is found to be solely liable for any damages suffered by Lana Willis under both the theory of strict liability and negligence."
Our careful review of the record reveals no clear error in the trial court's determination as to the liability of DOTD. Trooper Wright, the investigating officer, testified that the condition of the roadway could have contributed to plaintiff's accident. The trial court apparently accepted the testimony of the unbiased lay witnesses as to the dangerous condition of the highway over that of DOTD's own employees. Defendant's witnesses did concede that a road condition which could cause the undercarriage of an automobile to "scrape bottom" created a dangerous condition which called for emergency repair. Although defendant's witnesses did not feel that the condition in question would cause a vehicle to scrape bottom, three witnesses testified that their vehicles had experienced just that sort of occurrence upon encountering the stretch of highway in question. The trial court apparently relied on the testimony of the latter in determining that the condition of the roadway was unreasonably dangerous and DOTD was therefore strictly liable. We agree. Additionally, there is ample evidence in the record supporting the trial court's determination that DOTD is liable to plaintiff under a theory of negligence.
Likewise, we find no clear error in the trial court's determination that plaintiff was free of any fault. The sole witness testifying in regard to plaintiff's alleged negligence in causing or contributing to the accident was Trooper Wright, who estimated plaintiff's speed at 70 mph. However, this estimation did not take into account one of the admitted necessary factors in making a determination of a vehicle's speed, i.e., the weight of the vehicle involved. Without such factor, we can only consider Trooper Wright's estimation of speed as an educated guess. As such, we do not find that the trial court committed manifest error in disregarding this estimation. Accordingly, we conclude, as did the trial judge, that defendant simply failed to prove the fault of plaintiff. For these reasons, we affirm the trial court's finding that the sole cause of the accident was the defective roadway condition which presented an unreasonable risk of injury to those who prudently traveled La. Highway 377.

DAMAGES
Defendant next argues that the trial judge granted an excessive damage award. *552 In Darbonne v. Safeco Insurance Company of America, 452 So.2d 801 (La.App. 3rd Cir.1984), this court stated:
"Before a trial court award can be questioned as inadequate or excessive, a reviewing court must look first not to prior awards, but to individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to an individual case or plaintiff may a reviewing court determine that the award is excessive. Thus, the initial inquiry must always be directed at whether the fact-finder clearly abused their much discretion. La.C.C. art. 1934(3); Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 La.1976)."
Lana Willis was 27 years old at the time of the accident, married and the mother of three young children. She had a high school education with additional training in inhalation therapy from Oakdale General Hospital. On the date of the accident, Lana was employed by Home Health as a home health aide at a salary of $3.35 an hour. She had been working for Home Health since October of 1981. She had previously worked as an inhalation therapist at Oakdale General Hospital for approximately four years.
Following the accident, Lana was taken by ambulance to Oakdale General Hospital, then known as Humana Hospital, where she was diagnosed as having multiple fractures of her right leg, multiple lacerations and a subdural hematoma. Lana arrived at the hospital in a state of shock. X-rays taken at Humana Hospital revealed a severance of the mid-tibial shaft of her right leg with comminuted fractures (consisting of three or more bone fragments) and bony deformation of the fibula shaft of her right leg. There was also evidence of a fracture at the medial malleolus (ankle) of her right leg. The x-rays also indicated a fracture of the pelvis and a possible lung contusion.
The medical evidence adduced in this case is extensive and no good purpose would be served by detailing the testimony of each of Lana's treating and examining physicians, however, we will attach to this opinion an appendix, not for publication, which sets forth in some detail the extent of Lana's injuries, the treatment afforded her, and the opinions of her many physicians regarding the residual disabilities from which she will suffer in the future.
In sum, the record in this case reflects that following the accident, Lana remained hospitalized for the treatment of her physical problems for approximately thirty days, however, she remained under active medical treatment for her physical injuries for a period in excess of two years, during which period she was hospitalized on several other occasions and underwent five separate surgeries on her leg and ankle. In addition to her physical injuries, Lana suffered and still continues to suffer from severe psychological problems, directly attributable to the accident, which have drastically affected all dimensions of her life. Finally, the record clearly reflects that because of her residual emotional and physical problems, she has, since the accident, been unable to pursue any type of employment.
Appellant argues on appeal that the trial court's award of $650,000.00 is excessive. A review of the award is complicated by the fact that it is a lump sum award. However, the trial judge did particularize the following elements of his award in his written reasons for judgment:

 Property Damage $1,000.00
 Past Medicals $38,500.86
 Future Medicals $15,155.00

It is also noted that plaintiff presented evidence of past and future loss of wages through the testimony of an economist, Dr. Randy Rice. Defendant failed to controvert or dispute the calculations of Dr. Rice and we can assume that the trial judge accepted his opinion that Lana, as a reuslt of her injuries, suffered damages of $12,709.00 in past lost wages and $75,135.00 in future lost wages. In light of the specials awarded by the trial court ($142,499.86), the trial judge awarded plaintiff general damages of approximately $500,000.00. Considering the serious physical and emotional injuries from which plaintiff suffered and continues to suffer, which are fully detailed in the appendix attached hereto, *553 we find no clear error in the awards made by the trial court. Although it is difficult to place a dollar figure on an individual's pain and suffering, we cannot say that the trial court's award of general damages is excessive.
For the above and foregoing reasons, the judgments of the trial court, insofar as they relate to liability and damages, are affirmed. Defendant is cast for all costs of this appeal, the companion appeal and costs of the trial court amounting to the sum of $4,054.58.
AFFIRMED.
NOTES
[1] Suit was originally filed by Ervin Willis, Sr., individually and for and on behalf of the community of acquets and gains, and Lana M. Willis, individually. The petition of plaintiffs was later amended to change the name of the party plaintiff in the suit to read as follows: "Lana Melder a/k/a Lanna M. Willis". Named as defendant in the original suit was State of Louisiana, Through Department of Highways. Defendant answered the suit as State of Louisiana, Department of Transportation and Development. We will refer to defendant hereafter as DOTD.
[2] Trooper Wright testified that plaintiff's automobile was split completely in half upon impact with a large pine tree.
[3] The Wright photographs did not include a view of the roadway condition. The photographs depict only the path of plaintiff's vehicle after it had crossed the allegedly defective area and reflected its course across the southbound lane of traffic.