520 So.2d 984 (1987)
Dorothy Couvillion BRANNON, Plaintiff-Appellant,
v.
SHELTER MUTUAL INSURANCE COMPANY & Succession of Anna Joyce Meche Carriere Through her appointed Provisional Administrator, Uallen J. Carriere, Jr., Defendants-Appellees.
No. 85-1159.
Court of Appeal of Louisiana, Third Circuit.
November 16, 1987.
On Rehearing January 18, 1988.
Knoll, Roy & Spruill, Jerold E. Knoll and Clark C. Roy, Natchitoches, for plaintiff-appellant.
Voorhies & Labbe, E. Gregg Voorhies, Lafayette, for defendants-appellees.
Before DOMENGEAUX, DOUCET and LABORDE, JJ.
DOUCET, Judge.
Plaintiff, Mrs. Dorothy Brannon, a passenger in an automobile driven by Anna Joyce Carriere, received severe injuries when the automobile ran off the highway and crashed into a tree. The trial court found that defendants established the affirmative defense of the decedent driver's sudden unconsciousness, barring any finding of negligence on her part or recovery of damages by the plaintiff. We affirmed after concluding that there was a sufficient factual basis for the trial court's finding which was not manifestly erroneous. Brannon v. Shelter Mutual Insurance Co., 496 So.2d 1354 (La.App. 3rd Cir.1986). On writ of review the Supreme Court reversed, *985 finding that the defense of sudden unconsciousness was not proven by clear and convincing evidence, which it determined, was the applicable standard of proof. Brannon v. Shelter Mutual Insurance Co., 507 So.2d 194 (La.1987). On remand the sole issue presented is the amount of damages to which plaintiff is entitled for her injuries.
Mrs. Brannon, who was fifty-nine years old at the time of the accident, sustained fractures of both arms. Her right arm was fractured in two places, the left in four, requiring the insertion of metal rods into each arm. At trial, the judge viewed and described the operational scars on plaintiff's arms. On the right arm the scar ran from slightly below the shoulder past the elbow to the forearm. On the left arm the scar ran from the shoulder to the elbow. Both ankles were fractured, one being a compound fracture protruding through the skin. It was necessary to place metal supports in each ankle. Her right hip was fractured and dislocated. Eight months after the accident the right hip joint was totally replaced with an artificial one. Plaintiff also suffered fractured ribs on both her left and right sides and sustained a severe laceration of the face and scalp.
Following the accident plaintiff received treatment in a private hospital for three months, transferred to a nursing home for one month, returned to the hospital for operations, and received in-patient treatment at a charity hospital. She testified concerning the substantial pain and discomfort she experienced following the accident, and, to a lesser degree, was still experiencing at the time of trial. She testified that on a typical day she gets up in a wheelchair and eats breakfast. She then sits on the sofa until noon when her daughter comes to prepare lunch for her. She cannot walk without a brace on her left ankle. She must sit on a bench to bathe herself as she is unable to sit down in the tub for a bath or stand up for a shower. She also testified that she was unable to return to work at Garan, Inc., where she had worked since 1974 making zippers for clothing. This, because she does not have full use of her right hand due to the injuries sustained to her right arm. She also stated that she was unable to walk very far or stand for any length of time.
Mrs. Brannon's daughter testified that before the accident her mother was a healthy, active person. She was able to drive before the accident but does not drive anymore. She testified to the substantial pain that her mother appeared to be in following the accident and stated that she still suffers significant pain. Both Mrs. Brannon and her daughter admitted that at the time of trial the only medication she was taking for pain was Tylenol, the type that can be purchased over-the-counter without a prescription. No medical testimony was presented, either by live witness or deposition.
Plaintiff's past medical expenses at the time of trial totalled $135,929.32. Plaintiff seeks a total of $598,302.12 for past and future physical and mental pain and suffering, past and future medical expenses, and past and future loss of income.

PAIN AND SUFFERING
Plaintiff seeks a total of $300,000 for past and future pain and suffering, both mental and physical. The record clearly evidences the pain and suffering experienced by Mrs. Brannon following the accident. However the only medical evidence relating to this item of damages was a narrative medical report by Dr. James Lafleur summarizing the extent and treatment of plaintiff's injuries. This report was prepared by Dr. Lafleur almost a full year after he had last examined the plaintiff. There was no medical evidence presented concerning any future disability or complications from her injuries. However, considering the age of the plaintiff, the extent of her injuries, and condition at the time of trial, we believe there is sufficient evidence to conclude that she will continue to be restricted in her daily activities and suffer residual pain.
General damages, or damages for pain and suffering, cannot be fixed with any degree of pecuniary exactitude. Boswell v. *986 Roy O. Martin Lumber Co., 363 So.2d 506 (La.1978); Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974). Though we may look to awards made in similar cases, the facts and circumstances of each case are unique and the award must be based on those unique factors. Plaintiff cites as illustrative an award of general damages in the amount of $304,000. Defendants cite several similar cases where awards were made for general damages in the amounts of $60,000, $16,000, $35,000, and $37,000. They suggest that an award of $50,000 would adequately compensate the plaintiff for pain and suffering. Considering these and other awards, and the unique facts and circumstances of this case, we feel that an award of $100,000 for plaintiff's pain and suffering would be proper, particularly in view of the fact that the record is so devoid of medical evidence to support a claim for a higher award.

MEDICAL EXPENSES
A. PAST EXPENSES
The evidence established that at the time of trial plaintiff had been billed $135,929.32 for medical treatment. Mrs. Brannon maintained health and accident insurance through her employer. The insurer, Provident Life & Casualty Insurance Company, paid $52,382.03 of plaintiff's medical expenses for treatment received at Our Lady of Lourdes Hospital. The hospital took the balance owed them as a "contractual adjustment." Defendant argues that plaintiff is now only indebted for medical expenses in the amount of $57,579.96 and therefore her recovery should be limited to that amount.
The "collateral source rule" holds that a tortfeasor may not benefit because of payments made through insurance benefits received by the victim from sources independent of the wrongdoer's procuration or contribution. Hudson v. Thompson, 422 So.2d 640 (La.App. 3rd Cir.1982); Weir v. Gasper, 459 So.2d 655 (La.App. 4th Cir.1984) writ denied, 462 So.2d 650 (La.1985); Tumblin v. Gratech Corp., 448 So.2d 179 (La.App. 4th Cir.1984). In view of this established jurisprudential rule it is clear that the defendants are not relieved of liability for that portion of plaintiff's medical expenses paid by her insurer.
Contained in the record is a letter to plaintiff's counsel from the coordinator of patient records and accounts at Our Lady of Lourdes Hospital. The letter informs counsel that, although plaintiff was eligible for Medicaid, it was not necessary to bill the Medicaid program since the total amount paid by plaintiff's insurer was equal to, and, in fact, exceeded the amount which Medicaid would have covered. The letter also stated that the balance of plaintiff's bill, $25,967.33, "is taken as a contractual adjustment by the hospital." This "contractual adjustment" apparently refers to a policy of the hospital, when dealing with Medicaid patients, to take as a loss any amount which Medicaid will not cover. Defendants seek to benefit from this policy.
The Medicaid program is jointly funded by the state and federal government and provides medical aid for persons falling below a certain income level. Under the "collateral source rule" a tort-feasor may not benefit from plaintiff's insurance benefits from sources independent of the wrongdoer's procuration or contribution. Hudson, supra; Weir, supra; Tumblin, supra. Even if the hospital regularly writes off as "contractual adjustments" these types of losses in order to participate in the Medicaid program we do not feel that the defendants should benefit from a policy which is intended to afford medical treatment to those in need. Moreover, although plaintiff is no longer legally obligated to pay the $25,967.33 to the hospital, we feel there remains under the civil law a natural obligation owed to the hospital. See La.C. C. arts. 1760-1762. Accordingly, plaintiff is entitled to the full amount of her medical expenses attributable to the accident, $135,929.32.
B. FUTURE EXPENSES
Plaintiff also seeks $100,000 for future medical expenses. Damages for future medical expenses will be awarded only upon the presentation of credible evidence *987 showing that such expenses will be incurred. Roy v. Commercial Union Insurance Co., 486 So.2d 251 (La.App. 3rd Cir. 1986); Simon v. Smith, 470 So.2d 941 (La. App. 3rd Cir.1985) writ denied, 476 So.2d 353 and 476 So.2d 355 (La.1985); Mathews v. Hanover Insurance Co., 428 So.2d 1273 (La.App. 3rd Cir.1983). Plaintiff offered no evidence, medical or otherwise, showing that she will incur medical expenses in the future. We are unable to assume that she will incur any such expenses and accordingly may not award her any damages.

EARNINGS
A. PAST LOST INCOME
Plaintiff seeks $12,372.80 for past lost wages. This amount is calculated based upon plaintiff's hourly wage at the time of the accident, $4.07, the number of hours she worked per week, forty, and the number of weeks of work missed between the time of the accident and the time of trial, seventy-six. Defendants do not dispute that plaintiff is entitled to this amount for past lost wages. The record clearly supports an award of $12,372.80 for past lost wages.
B. FUTURE LOST INCOME
Plaintiff seeks $50,000 for future lost income or impairment of earning capacity. Proof of loss of earnings due to disability must be made with reasonable certainty speculation, probabilities, and conjecture cannot form the basis for such an award. Thomas v. State Farm Insurance Co., 499 So.2d 562 (La.App. 2nd Cir.1986) writ denied, 501 So.2d 213 and 501 So.2d 215 (La. 1987); Roe v. Somerson, 419 So.2d 1249 (La.App. 1st Cir.1982).
Plaintiff bases her claim for damages for future lost wages on her testimony at trial that she had not regained the full use of her right hand and therefore could not return to work at Garan, Inc. producing zippers. In her brief on remand it is asserted that plaintiff has "no prospects of rehabilitation" and "has no hope of adaptability to rehabilitation." It is further asserted that "there is absolutely no kind of work that she can do, nor will she be able to perform in the future." While it is true that Mrs. Brannon sustained severe injuries in the accident from which she still suffered some disability and pain at the time of trial, no evidence was presented at trial concerning any future disabilities, prospects for rehabilitation, or ability to engage in any type of employment.
However, we must also consider plaintiff's unique circumstances. She apparently has no skills. She was 60 years old at the time of trial. Statistically, her useful work life is nearly over. She will be eligible to retire and receive Social Security benefits in a few years. Any rehabilitation or training might, therefore, be considered somewhat futile. At the time of the accident plaintiff, at five feet four inches tall and weighing 187 pounds, was moderately obese. No evidence was presented concerning her weight at the time of trial, but assuming that she is still somewhat overweight, and considering the condition of her left ankle, which requires a brace for her to walk, and her artificial hip joint, plaintiff will have trouble moving around for at least the next few years, thus limiting any employment opportunities.
Defendants cite the lack of conclusive evidence concerning plaintiff's future disability. In conclusion however, they suggest that due to her advanced age, plaintiff would not have continued working for Garan, Inc. past her 65th birthday. We feel the evidence can support, at most, a finding that Mrs. Brannon will be disabled from obtaining gainful employment for five years past the date of trial. Based upon an hourly wage of $4.07, for forty hours per week for two hundred and sixty weeks, we will award plaintiff a total of $42,328.00 for impairment of earning capacity.
For the reasons assigned:
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that there be and hereby is judgment in favor of plaintiff, Dorothy Couvillion Brannon, and against defendants, Shelter Mutual Insurance Company and the Succession of Anna Joyce Meche Carriere, in the amount of TWO HUNDRED NINETY-SIX THOUSAND, *988 SIX HUNDRED THIRTY AND 12/100 ($296,630.12) DOLLARS.
RENDERED.
LABORDE, J., concurs in part and dissents in part and assigns reasons.
LABORDE, Judge, concurring in part and dissenting in part.
The majority awards plaintiff $135,492.32 in medical expenses, $12,372.00 for past lost wages and $42,328.00 for future lost wages. I concur as to these awards.
However, I respectfully dissent in regards to the $100,000.00 award for plaintiff's pain and suffering as I feel that this amount is grossly inadequate. The majority opinion discloses that the plaintiff fractured her right arm in two places and her left in four places requiring insertion of metal rods into each arm. She had severe scars on each arm. She fractured both ankles, one of which was a compound fracture with the bone protruding through the skin. Metal supports were placed in each ankle. Her right hip was fractured and dislocated and was subsequently totally replaced with an artificial one. She also sustained fractured ribs on both sides of her body and severe laceration of her face and scalp.
This circuit recently awarded the plaintiff in Melder v. State, Through Department of Highways, 512 So.2d 546 (La.App. 3d Cir.1987), approximately $500,000.00 in general damages. That plaintiff suffered injuries comparable to those suffered by the plaintiff in the present matter, although Mrs. Brannon has not had the psychological problems that the plaintiff in Melder suffered. Also there are several recent cases with awards of at least $200,000.00 in general damages given to plaintiffs who I feel suffered injuries of a lesser magnitude that Mrs. Brannon. See Richardson v. Continental Insurance Co., 468 So.2d 675 (La.App. 3d Cir.), writ denied, 474 So.2d 1304 (La.1985); Pawlak v. Brown, 430 So.2d 1346 (La.App. 3d Cir.), writ denied, 439 So.2d 1072 (La.1983); Brown v. DSI Transports, 496 So.2d 478 (La.App. 1 Cir.), writ denied, 498 So.2d 18 (La.1986); Efferson v. State, through DOTD, 463 So.2d 1342 (La.App. 1 Cir.1984), writ denied, 465 So.2d 722 (La.1985); Garrick v. Washington Parish, 440 So.2d 787 (La.App. 1 Cir.1983), writ denied, 444 So.2d 1222 (La.1984).
After considering these cases, I feel that an award of at least $200,000.00 is warranted. Therefore, I respectfully dissent as to the general damage award of $100,000.00.

ON REHEARING
DOUCET, Judge.
Shelter Mutual Insurance Company has filed this application for a rehearing arguing this court committed error by casting both Shelter and the Succession of Anna Joyce Meche Carriere solidarily liable for the entire amount of the judgment ($296,630.12), instead of limiting Shelter's liability to the amount of their policy limits ($100,000 per person). We agree.
The policy issued to Anna Joyce Carriere provided for liability limits in the amount of $100,000 per person. The policy was pleaded by Shelter in its answer and introduced into evidence. In view of the specific policy language limiting the insurer's liability to $100,000 for each person, we amend the judgment to limit Shelter's liability to the amount of $100,000. See Indovina v. Jones, 374 So.2d 174 (La.App. 4th Cir.1979).
For the reasons assigned, the judgment is amended only to the extent of limiting the liability of Shelter Mutual Insurance Company to the amount of $100,000. We recast our judgment as follows:
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that there be and hereby is judgment in favor of plaintiff, Dorothy Couvillion Brannon, and against the defendant, the Succession of Anna Joyce Meche Carriere in solido with its insurer, Shelter Mutual Insurance Company, up to the amount of its policy limits of $100,000, and against the defendant, Succession of Anna Joyce Meche Carriere in the amount of $196,630.12, together with legal interest on *989 each sum from date of judicial demand until paid, plus all costs.
Accordingly the judgment is amended and recast.
AMENDED AND RECAST.