STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT


03-1441


LAWRENCE SMITH

VERSUS

ROY O. MARTIN LUMBER COMPANY


**********
APPEAL FROM THE
OFFICE OF WORKERS COMPENSATION
DISTRICT 2, PARISH OF RAPIDES, NO. 02-6738
HONORABLE JAMES BRADDOCK, PRESIDING
**********


SYLVIA R. COOKS
JUDGE


**********

Court composed of Sylvia R. Cooks, Marc T. Amy and Elizabeth A. Pickett, Judges.

AFFIRMED.

Russell L. Sylvester
Brittain & Sylvester, LLP
113 East Fifth Street
P.O. Box 2059
Natchitoches, LA   71457
(318) 352-9580
COUNSEL FOR PLAINTIFF/APPELLEE:
        Lawrence Smith


John F. Wilkes, III
Lisa E. Mayer
200 West Congress Street, Suite 1000
P.O. Box 4305
Lafayette, LA   70502-4305
(337) 232-1604
COUNSEL FOR DEFENDANT/APPELLANT:
        Roy O. Martin Lumber Company

**COOKS, Judge.**

The employer appeals the judgment of the Office of Workers' Compensation finding Lawrence Smith was disabled as a result of a compensable work accident and awarding him certain medical costs allegedly associated with the injury. The employer also appeals the award of mileage expenses, as well as the assessment of penalties, attorney fees and court costs. For the following reasons, we affirm the judgment.

## FACTS

Lawrence Smith began his employment with Martco Limited Partnership in July, 1996. On February 18, 2002, Smith arrived at Roy O. Martin Lumber Company, a Martco plant, where he was working as a millwright. In his oral reasons for judgment, the workers' compensation judge set forth the facts surrounding this case:

> [Smith] testified that on or about February the 18th of 2002, that he arrived to the plant at his normal arrival time, which was approximately 6:30 a.m. He was to begin his shift work at 7:00 a.m. He testified that he got his lunch box and he clocked in at the guard gate. And when he exited the guard gate, he must have stepped wrong because he felt a catch in his back. Then he went on and continued to retrieve his tools from his locker and attend the safety meeting. And that the walk from the guard house to his locker was approximately a quarter of a mile; that as he made that walk, that his pain subsided somewhat and he felt that it was bearable and that he only had – probably had a pulled muscle. He said he retrieved his tools, put them in the buggy, went to the safety meeting. He didn't complain to anyone at the safety meeting about his back pain. After the safety meeting, he put his tools on his shoulder, climbed some steps to go to his work station. On his climb of these steps, he said he felt a sharp pain in his lower back that brought him to his knees.
>
> He testified he went on to his saw line and attempted to perform his job duties. But within about an hour, hour and a half, the pain got so severe, he reported the pain to his foreman, Mr. Jerome. And this foreman said he needed to see Mr. Mike Fontenot and may need to go home. They took him down to Mr. Mike Fontenot's office. An accident report was made by Mr. Mike Fontenot. The report indicated – The report filled [sic] on the same date indicated that Mr. Smith was clocking in and walking through the door. When he stepped through the door and

turned, he felt a pain above the left leg and in his back above the buttock area. And this was dated February the 18th of 2002.

The company nurse, Ms. Colleen VanMol, was called to see the plaintiff at Mike Fontenot's office. She testified that Mr. Smith seemed to be in severe pain, that she took him to the Louisiana Occupational Health Services Clinic. She testified that on the way to the Louisiana Occupational Health Services Clinic, that Mr. Smith told her that he had been taking Arthrotec, an arthritis medication which was prescribed to him by the V.A. Hospital. She testified that on the drive to Louisiana Occupational Health Services, that Mr. Smith told her about the pain he experienced going up the stairs. When he got to the Louisiana Occupational Health Services Clinic, the history given in that clinic's report is that he was walking, he stepped wrong, he felt a sharp pain in his low back. It started bothering him more after he walked up and down stairs. He was told to use ice and heat and to return to his regular duties. Ms. Colleen VanMol said she brought Mr. Smith back to the plant. And because he seemed to be in pain – Although it was less pain because he had received an interjection – she told him to go home.

Mr. Smith's testimony was that he attempted to be seen by a physician, called Ms. Colleen VanMol the next day. He hadn't received a phone call from her by 11:30 a.m. on that day, so he had his son bring him to the V.A. Hospital. The V.A. Hospital wasn't quite sure what his condition was because, on that occasion, he had a fever, as well. Subsequently, he was diagnosed with an acute disc herniation by the V.A. Hospital. And he underwent low back surgery. And he has not returned to work since his low back surgery, that Martco Partnership has not offered him any jobs. This was corroborated by his wife.

Mr. Terry Garrett testified on behalf of the employer that the claim was essentially denied by Martco Partnership because they felt like he didn't identify a specific event, that taking a step out of the guard house had nothing to do with the job duties of Mr. Lawrence Smith and that Mr. Lawrence Smith had made misrepresentations because the accident report completed by Mr. Mike Fontenot didn't contain any information about going up and down steps or any pain on the steps. However, they had on that – they had in their possession, during their investigation, a report from the Louisiana Occupational Health Services on the same date that he reported pain in his low back, making a step out of the guard house, that it worsened going up and down the steps. Also, Ms. Colleen VanMol testified that on the same date, she was told that by Mr. Lawrence Smith.

They also assert that he made misrepresentations because, in his questionnaire filled out at the Louisiana Occupational Health Services, he indicated he had no previous back pain, and that this Court should not credit Mr. Smith's testimony that he was in such severe pain on that occasion, that he didn't understand the questionnaire or appropriately fill it out. He was assisted by Ms. VanMol when he was at the Louisiana Occupational Health Services. Ms. VanMol had been told, on the way

from the plant to Louisiana Occupational Health Services, that he had been taking Arthrotec. The medical records obtained by the employer, in their search of previous back problems, only indicate that he had occasional low back pain, that he had never been diagnosed with an injury, that he had had some testing done and was never diagnosed with a disc herniation, which was the job diagnosis from this job incident.

The workers' compensation judge determined that Smith suffered a compensable accident and was entitled to temporary total disability benefits from February 19, 2002 through February 3, 2003, at which time Smith was released to work at modified duty. Smith was awarded supplemental earnings benefits from February 4, 2003 continuing until it was determined that they might be reduced or terminated. The WCJ also awarded Smith all necessary and reasonable medical care as well as penalties and attorney fees for Martco's failure to pay indemnity benefits, medical expenses associated with his back injury, and medical expenses associated with the anal fissures. Martco was awarded a credit for the wages in lieu of compensation benefits which were paid, but their allegation of employee fraud under La.R.S. 23:1208 was denied. The WCJ also refused to grant Martco a credit under La.R.S. 23:1212 for benefits which were expended under their Employee Benefit Trust, as well as refusing Martco's request to apply the reimbursement fee schedule of La.R.S. 23:1034.2. Martco perfected this appeal.

## ANALYSIS

### I.   *Work-Related Accident.*

Martco contends Smith failed to put forth any evidence of an actual, identifiable, precipitous event which caused his disc herniation.

To receive workers' compensation benefits, a worker must first establish, by a preponderance of the evidence, "personal injury by accident arising out of and in the course of his employment." La.R.S. 23:1031(A). A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied:

-3-

(1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. *Bruno v. Harbert International Inc.*, 593 So.2d 357 (La.1992); *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146 (La.1979). Corroboration of the worker's testimony may be provided by the testimony of fellow workers and spouses, as well as by the medical evidence. *West*, 371 So.2d 1146.

The WCJ's determinations as to whether the worker's testimony is credible and whether the worker has discharged his burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. *Pauley v. Wal-Mart Stores, Inc.*, 02-1354 (La.App. 3 Cir. 6/4/03), 847 So.2d 757, *writ denied*, 03-1884 (La. 11/21/03), 860 So.2d 544.

In his written reasons for judgment, the workers' compensation judge found Smith sustained his burden of proving a work-related accident by a preponderance of the evidence. He concluded the evidence presented at trial substantiated his version of the accident, rather than casting doubt on it. A review of the record reveals that this finding is not manifestly erroneous.

Dr. Donald Smith testified he believed Smith sustained a herniated disc as he walked up the stairs. He based this conclusion on Smith's testimony relating he suffered severe pain as he walked up the stairs contrasted to the lesser pain he experienced following the turning incident going through the door.

Martco argues Smith never gave a history of suffering increased pain as he walked up the stairs. However, the WCJ noted that Smith informed Colleen VanMol of the severe pain he felt during the stairs incident on their way to Louisiana Occupational Health Services. Moreover, the report from Louisiana Occupational Health Services indicated Smith informed its employees of increased pain he experienced while walking up the stairs. The report read, in pertinent part, as follows:

He was walking, and he stepped wrong, and he felt a sharp pain in his [lower] back, it started bothering him more after he walked up and down the stairs.

Michael Fontenot, Smith's supervisor, testified when he first saw Smith on the morning of the alleged accident, it was obvious he was in severe pain. VanMol also stated she found Smith was in obvious pain when she first saw him that morning.

Although there was some evidence that Smith had suffered some back pain in the past, there was no evidence he sustained any type of herniated disc. Any previous back pain was more likely attributable to degenerative changes and arthritis. Smith informed VanMol he was taking Arthrotec, an arthritis medication.

After a thorough review of the record, we cannot say the workers' compensation judge erred in finding Smith established by a preponderance of the evidence he suffered a work-related injury.

## II. *Employee Fraud under La.R.S. 23:1208.*

We find no basis for Martco's contention Smith made willful misrepresentations for the purpose of obtaining benefits in violation of La.R.S. 23:1208. Martco alleges in the questionnaire filled out at Louisiana Occupational Health Services, Smith indicated he had no previous back problems. As stated above, although there was some evidence Smith had suffered from back pain in the past, the record indicates it was attributable to degenerative changes and/or arthritis. The employer was unable to present any evidence that Smith was ever diagnosed with any back injury or suffered from a herniated disc.

The employer also argued May 1992 medical records from the Highland Hospital show Smith received prior treatment for lower back pain. Although the records indicate Smith listed pain in his lower back as a complaint, the chief complaint listed is abdominal pain. Those records also indicate a gastroscope was performed

and antacids were prescribed.

Forfeiture of benefits under La.R.S. 23:1208 is a harsh remedy which must be strictly construed. *Smith v. Quarles Drilling Co.*, 99-171 (La.App. 3 Cir. 6/2/99), 741 So.2d 829, *writ denied*, 99-1949 (La. 10/8/99), 751 So.2d 227. Whether or not an employee has forfeited his right to benefits under La.R.S. 23:1208 is a question of fact, which will not be reversed on appeal in the absence of manifest error. *Id.* We find no error on the WCJ's part in finding Smith did not violate La.R.S. 23:1208.

### III. *Costs of the Anal Fissure Surgery.*

Martco argues the anal fissure surgery was not related to Smith's work-related injury. They note Smith had significant problems relating to hemorrhoids for years and at one point desired surgery to correct the problems. However, the WCJ relied upon the testimony of Dr. Stratton (who performed the surgery) that it was "quite clear that even though Mr. Smith had a previous history of hemorrhoids, that everyone had hemorrhoids and that this was in no way associated with the anal fissures that he had which occurred after his surgery and his use of narcotic pain medications that caused constipation." A review of the record confirms Dr. Stratton concluded Smith's anal fissure surgery was necessitated by the medications taken due to the back surgery. The WCJ found there was no contrary medical opinion given with respect to the cause of the anal fissures. Accordingly, we find no error in the WCJ's conclusion that the anal fissure surgery was related to Smith's back surgery and thus compensable.

### IV. *Credits and Reimbursement.*

Martco contends it is entitled to a credit under La.R.S. 23:1212 for benefits which were expended under their Employee Benefit Trust. The WCJ refused to award a credit because there was no evidence put forth as to what percentage was funded. The second circuit in *Taylor v. Columbian Chemicals*, 32,411 (La.App. 2 Cir.

10/27/99), 744 So.2d 704, discussed whether the employer must prove both the entitlement to and the amount of any requested credit. The *Taylor* court stated as follows:

> The early cases discussing offset, *Matthews v. City of Alexandria*, [619 So.2d 57 (La. 1993)] and *Cousins v. City of New Orleans*, 608 So.2d 978 (La.1992), actually involved a different statute, R.S. 23:1225 C(1), which provides for a reduction of weekly benefits when the employee also receives Social Security old age benefits "to the extent not funded by the employee" or benefits under disability benefits plans "in the proportion funded by an employer." The Supreme Court interpreted R.S. 23:1225 as placing the burden on the employer or insurer to prove how much of the employee's premiums it paid, in order to obtain the reduction. Subsequent appellate decisions have imposed the same duty under 23:1212. *Gentile v. Baton Rouge General*, [95-348 (La.App. 1 Cir. 11/9/95), 665 So.2d 422]; *Parfait v. Gulf Island Fabrication, Inc.*, 97-2104 (La.App. 1 Cir. 1/6/99), 733 So.2d 11; *see also Lee v. Bancroft Bag Inc.*, [30,820 (La.App. 2 Cir. 8/19/98), 717 So.2d 1230]. Columbian's argument that the employee must bear this burden lacks support and is simply wrong.

*Taylor*, 744 So.2d at 710.

Thus, we find no error on the WCJ's part in denying the credit.

Martco also cites *Spence v. Industrial N.D.T.*, 31,744 (La.App. 2 Cir. 3/31/99), 731 So.2d 473, for the proposition that Smith should not be able to recover any medical expenses (in this case expended for physical therapy) which were paid by his wife's insurer. We do not agree. In *Spence*, the claimant's *mother's* insurer paid benefits and therefore claimant could not recover those benefits. However, La.R.S. 23:1212 specifically allows for recovery of expenses "[i]f the employee or the employee's spouse actually pays premiums for health insurance. . ." The WCJ did not err in allowing Smith recovery for the amounts of his medical bills paid by his wife's insurer.

Martco also argues the WCJ erred in ruling it could not apply the fee schedule of La.R.S. 23:1034.2 "because the employer denied the claim from the very

beginning." Since Martco denied the claim from the onset, Smith was forced to fund the costs of medical treatment himself, either through insurance or from the Veteran's Administration Hospital. La.R.S. 23:1142(E) provides in the "event that the payor has denied that the employee's injury is compensable under this Chapter, then no approval from the payor is required prior to the provisions of any diagnostic testing or treatment for that injury." We agree with the WCJ that the employer is not entitled to rely on the fee schedule benefits after making a total denial of the claim and forcing the claimant to seek medical treatment unilaterally. *See Barron v. First Lake Properties, Inc.*, 93-902 (La.App. 5 Cir. 3/29/94), 636 So.2d 970, 973 (noting if a "claim is found to be valid by the insurer or the court, the employer will be liable for those expenses under La.R.S. 23:1202 as well as La.R.S. 23:1142(D). If it's not compensable, the employer will not be held liable for them.").

## V. *Costs of Back Surgery at the VA Hospital.*

Smith was forced to undergo back surgery at the VA Hospital because Martco's denied his claim for back surgery. The WCJ awarded Smith the costs of the back surgery. Martco notes no evidence of any amounts owed to the VA Hospital for the surgery were introduced in the record. Counsel for Smith acknowledged he was unable to obtain the charges from the VA Hospital despite numerous requests, and Smith has not been requested by the VA Hospital to reimburse them the charges associated with the back surgery.

Martco argues to give Smith the award for the cost of the back surgery would be "against the civilian law notion of payment for a thing not owned and/or unjust enrichment," and would be a "windfall to claimant not contemplated by the worker's compensation statutes." Smith fears the VA Hospital may assert a claim against him, and Martco should be obligated to pay any expenses which Smith incurred as a result

of his treatment at the VA Hospital.

Under the collateral source rule, a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of money received by the plaintiff from sources independent of the tortfeasor's procuration or contribution. *Louisiana Department of Transportation and Development v. Kansas City Southern Railway Co., Inc.*, 02-2349 (La. 5/20/03), 846 So.2d 734. Under this doctrine, payments received from the independent source are not deducted from the award the aggrieved party would otherwise receive from the wrongdoer. *Id*. As stated by the Supreme Court in that case:

> We recognize that the collateral source rule is most commonly applied to insurance proceeds. Under this general rule, a tortfeasor's liability to an injured plaintiff should be the same, regardless of whether or not that plaintiff had the foresight to obtain insurance. However, our courts have applied the doctrine to a range of situations where the collateral source is provided to the plaintiff by a government agency or even a gratuitous source.
>
> For example, a tortfeasor's liability may not be reduced by the amount of a victim's expenses paid by Medicare.

*Id*. at p. 9, 846 So.2d at 740 (citations omitted).

However, the situation at bar concerns not what was paid by a governmental agency, but an amount that was never charged to the plaintiff. A split in the circuits exists as to how to handle contractual write-offs made in conjunction with payments from an insurer to a participating provider who has contractually agreed to the write-offs and to accept the payments in full satisfaction of the debt for medical services rendered.

In *Brannon v. Shelter Mutual Insurance Company*, 520 So.2d 984 (La.App. 3 Cir.1987), this court held the collateral source rule was applicable and allowed a tort victim to recover write-offs based on its finding that the plaintiff retained a natural obligation to pay the hospital the full amount of the bill for services provided.

Recently, this court in *Conrad v. City of New Iberia*, 03-0121(La.App. 3 Cir. 6/4/03), 847 So.2d 784, was asked to address *Brannon* based on recent developments in the law:

> The City of New Iberia argues that this court should not follow the precedent set in its previous finding in [*Brannon*], because the law has evolved since that date and the second and fourth circuits have declined to follow it. *See Suhor v. Lagasse*, 00-1628 (La.App. 4 Cir. 9/13/00), 770 So.2d 422; *Terrell v. Nanda, M.D.*, 33,242 (La.App. 2 Cir. 5/10/00), 759 So.2d 1026. This court recently had an opportunity to address the evolution of the law in this area and emphatically stated, "In *Brannon v. Shelter Mut. Ins. Co.*, 520 So.2d 984 (La.App. 3 Cir.1987), we held the collateral source rule applies to Medicare payments. We find the appellant's argument clearly supported by the jurisprudence and order the award for medical expenses increased to $6,617.08." *Trueman v. City of Alexandria*, 01-1130, p. 8 (La.App. 3 Cir. 5/15/02), 818 So.2d 1021, 1026, *writ granted*, 02-2166 (La.11/15/02), 829 So.2d 410.

Based on our ruling in *Brannon* we find no error on the WCJ's part in awarding Smith the costs of his back surgery.

## VI.    *Award of Mileage.*

Under La.R.S. 23:1203(D), an "employer shall be liable for the actual expenses reasonably and necessarily incurred by the employee for mileage reasonably and necessarily traveled by the employee in order to obtain the services, medicines, ...." However, a claimant must present evidence of such expenses. Martco contends the WCJ's award of mileage was not supported by the evidence. Smith provided mileage requests which set forth the healthcare provider, the date of travel and the number of miles traveled. Smith testified at trial that these requests accurately reflected a breakdown of the mileage he traveled for treatment. We find no error on the WCJ's part in accepting this as sufficient proof of Smith's travel expenses.

## VII.   *Award of Attorney Fees.*

The Louisiana Supreme Court in *Authement v. Shappert Engineering*, 02-1631 (La. 2/25/03), 840 So.2d 1181, examined whether a failure to authorize a medical procedure for an employee eligible to receive workers' compensation is tantamount to a failure to furnish compensation benefits, thus warranting penalties and attorney fees under La.R.S. 23:1201. The court stated as follows:

> One purpose of the workers' compensation statute is to promptly provide compensation and medical benefits to an employee who suffers injury within the course and scope of employment. The employer is obligated to "furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal." LSA-R.S. 23:1203(A). Thus, we conclude that a failure to authorize treatment can result in the imposition of penalties and attorney fees except when the claim is reasonably controverted. Depending on the circumstances, a failure to authorize treatment is effectively a failure to furnish treatment.

*Authement*, 840 So.2d at 1186-1187.

Thus, the question before us is whether the claim was reasonably controverted.

Terry Garrett, who administered the claim for Martco, made the decision that Smith's claim was not compensable. Smith was informed in a letter that no work injury was identified and his medical history revealed a diagnosis of degenerative low back disease as early as 1998. Garrett also stated that walking through a doorway is neither directly or indirectly related to or caused by Smith's employment, though he felt walking up steps could be related to his employment. Garrett assumed for the purposes of his report that Smith stated he herniated his disc when walking through the door rather than walking up the stairs. It does not appear he considered Smith's statement to Colleen VanMol, nor the history recorded by Louisiana Occupational Health Services where Smith stated he felt increased pain when he walked up the stairs. Garrett also admitted he did not take a statement from Smith, or contact his treating physician.

The WCJ found Martco's actions in denying compensability "totally unreasonable to the level of being arbitrary." We agree. It is apparent after reviewing the record that Martco did not thoroughly investigate Smith's claim, and the WCJ did not err in awarding attorney fees.

Martco also argues the WCJ erred in rendering multiple awards of attorney fees. The WCJ rendered three $5,000 attorney fee awards for Martco's failure to pay indemnity benefits, failure to provide medical coverage for Smith's back surgery, and failure to provide medical coverage for the anal fissure surgery.

The Louisiana Supreme Court in *Fontenot v. Reddell Vidrine Water Dist.*, 02-439, 02-442, 02-478 (La.1/14/03), 836 So.2d 14, found La.R.S. 23:1201(F) provides multiple penalties and attorney fees for multiple violations of compensation and medical benefits claims.

The Legislature subsequently added subsection J to La.R.S. 23:1201, effective July 3, 2003, which provides in pertinent part as follows:

> J.  Notwithstanding the fact that more than one violation in this section which provides for an award of attorney fees may be applicable, only one reasonable attorney fee may be awarded against the employer or insurer in connection with any hearing on the merits of any disputed claim filed pursuant to this Section . . .

Martco argues the addition of subsection J should be applied retroactively and only one attorney fee award is allowable. However, in *Gay v. Georgia Pacific Corp.*, 32,653 (La.App. 2 Cir. 12/22/99), 754 So.2d 1101, it was held the provisions of the statute in effect at the time of the withholding of benefits control the award of penalties and attorney fees. *See also Skipper v. Acadian Oaks Hosp.*, 00-67 (La.App. 3 Cir. 5/3/00), 762 So.2d 122. Moreover, the enactment of Subsection J changes the law and thus has substantive effect. La.Civ.Code art. 6 provides that substantive laws apply prospectively only and cannot be given retroactive effect in the absence of

contrary legislative expression. Since the denial of benefits and failure to pay medical expenses occurred prior to the enactment of subsection J, the WCJ did not err in making multiple awards of attorney fees.

## VIII. *Assessment of Court Costs.*

Martco contends the WCJ erred in assessing all court costs against it in this matter. Under La.Code Civ.P. art. 1920, "the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable." An appellate court will not reverse a lower court's decision to cast a party with court costs unless it is shown to be an abuse of discretion. *Hollingsworth v. Bowers*, 96-257 (La.App. 3 Cir. 12/30/96), 690 So.2d 825. We find no abuse of discretion in the WCJ's assessment of court costs.

### DECREE

For the foregoing reasons, the judgment of the Office of Workers' Compensation is affirmed. All costs of this appeal are assessed against appellant, Martco Limited Partnership.

**AFFIRMED.**

NUMBER 03-1441

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

LAWRENCE SMITH

VERSUS

ROY O. MARTIN LUMBER COMPANY

AMY, J., dissenting.

La.R.S. 23:1031(A) permits for recovery of benefits when an employee "receives personal injury by *accident* arising out of and in the course of his employment . . . ." (Emphasis added). "Accident" is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La.R.S. 23:1021(1). In my opinion, the type of event experienced by the claimant does not fit within the above-definition of accident as there appears to have been no unexpected or unforeseen, precipitous event. Rather, the claimant was merely walking/climbing stairs while on the job.

I note, that this is not an instance where the claimant, suffering from a pre-existing condition, suffered injury from a subsequently occurring accident. *See, e.g., Guidry v. Serigny*, 378 So.2d 938 (La.1979)(wherein the Louisiana Supreme Court held that a fall constituted an accident, whether occurring due to a heart attack, fainting spell, or a slip. The resulting fall was found to be the accident, rather than the preexisting condition); *Morris v. City of Opelousas*, 572 So.2d 639 (La.App. 3 Cir. 1990)(wherein a panel of this court concluded that a fall subsequent to an epileptic seizure, rather than the seizure itself, constituted an accident). In the present case, there is no subsequent occurrence alleged to have constituted an "accident." Rather,

unlike those cases referenced above, there is only the onset of the plaintiff's medical condition.

As I find a reversal appropriate, I respectfully dissent.