847 So.2d 757 (2003)
Robert C. PAULEY
v.
WAL-MART STORES, INC.
No. 02-1354.
Court of Appeal of Louisiana, Third Circuit.
June 4, 2003.
*758 Marcus Miller Zimmerman, Lake Charles, LA, for Plaintiff/Appellee, Robert C. Pauley.
Charles Martin Kreamer, Sr. Allen & Gooch, Lafayette, LA for Defendant/Appellant, Wal-Mart Stores, Inc.
Court composed of NED E. DOUCET, JR., Chief Judge, GLENN B. GREMILLION, and ELIZABETH A. PICKETT, Judges.
GLENN B. GREMILLION, Judge.
The defendant, Wal-Mart Stores, Inc., appeals the judgment of the workers' compensation judge finding that the plaintiff, Robert Pauley, injured his back as a result of a work-related accident, that he did not commit fraud in obtaining workers' compensation benefits, and that he was a full-time employee. For the following reasons, we affirm.

FACTS
On February 15, 2001, Pauley alleged that he injured his lower back while lifting a case of motor oil at the Wal-Mart store located in DeRidder, Louisiana. His shift ran from 10:00 p.m. until 7:00 a.m., and he alleged that the accident happened at approximately 6:45 a.m. He stated that he felt an immediate pain and tingling in his lower back, radiating down to his toes, and that he had trouble walking. Although he did not report the accident before leaving, he returned with his grandmother at approximately 8:00 a.m. and did so. Pauley was sent by Wal-Mart to Dr. Charlotte Fowler, a family physician, who diagnosed him as suffering from a sprain and strain of his lumbar spine. A February 28, 2001 MRI revealed a herniated disc at L5-S1 with impingement of the right neural canal. Dr. James Perry, an orthopedic surgeon, treated Pauley conservatively with an epidural steroid injection, but then recommended that he undergo a discectomy at L5-S1. Wal-Mart obtained a second opinion from Dr. William Foster, a neurosurgeon, *759 who agreed with Dr. Perry's recommendation of surgery.
On May 9, 2001, Pauley filed a disputed claim for compensation based on Wal-Mart's failure to authorize the recommended surgery and to have his workers' compensation rate corrected. Wal-Mart denied Pauley's allegations and filed a First Supplemental and Amending Answer Alleging 1208 Fraud. It alleged that Pauley stated in his Wal-Mart associate statement and in a February 16, 2001 recorded statement that he had never injured his back before, when in fact he had suffered back injuries on three previous occasions, and that he failed to inform Drs. Perry and Foster of these prior injuries. Wal-Mart further alleged that, although Pauley denied suffering any previous work-related injuries in his recorded statement, he had, in fact, suffered two prior work-related injuries. Wal-Mart notified Pauley that it was terminating his workers' compensation benefits based on the aforementioned fraud effective August 13, 2001.
Following a hearing on the merits, the workers' compensation judge took the matter under advisement. Thereafter, she rendered written reasons for judgment finding that Pauley proved he suffered a work-related injury, that he was entitled to workers' compensation benefits as a full-time employee, and that he did not commit 1208 fraud. She further held that the matter was reasonably controverted, thus, denying Pauley's request for penalties and attorney's fees. Judgment was rendered on September 11, 2002. This suspensive appeal by Wal-Mart followed.

ISSUES
On appeal, Wal-Mart raises three assignments of error. It argues that the workers' compensation judge erred in finding that Pauley proved that he suffered a work-related accident, that he did not commit 1208 fraud, and that he was entitled to workers' compensation benefits as a full-time employee.
Pauley has answered the appeal alleging that the workers' compensation judge erred in failing to award him penalties and attorney's fees. He also seeks additional attorney's fees for work performed on appeal.

FORFEITURE OF BENEFITS
La.R.S. 23:1208(A) provides, "It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation." Thus, in order for an employer to prove forfeiture pursuant to La.R.S. 23:1208, it must prove that a false representation was willfully made by the employee for the purpose of obtaining compensation benefits. Resweber v. Haroil Constr. Co., 94-2708 (La.9/5/95), 660 So.2d 7. An inadvertent or inconsequential false statement will not result in the forfeiture of benefits. Jim Walter Homes, Inc. v. Prine, 01-116 (La. App. 1 Cir. 2/15/02), 808 So.2d 818. Whether or not an employee has forfeited his right to such benefits is a question of fact, which will not be reversed on appeal in the absence of manifest error. Smith v. Quarles Drilling Co., 99-171 (La.App. 3 Cir. 6/2/99), 741 So.2d 829, writ denied, 99-1949 (La.10/8/99), 751 So.2d 227.
Wal-Mart introduced an associate statement in which Pauley stated he had never injured his back before. However, it introduced evidence that Pauley was treated at the W.O. Moss Regional Medical Center on January 22, 2001, after being involved in a one-vehicle accident on January 19, 2001. A lumbosacral spine x-ray was negative for acute compression fracture, but revealed a narrowed L5-S1 intervertebral *760 space. Pauley was diagnosed with a lumbar sprain, prescribed pain medication, and recommended to refrain from working for one week. The records of Dr. Chuen Kwok on January 29, 2001, reveal that Pauley reported he had been involved in a car accident two weeks prior and that he was taking hydrocodone for lower back pain.
Wal-Mart also introduced evidence that Pauley suffered a lower back injury on January 13, 2000, when he was assaulted by several assailants. During this incident, he was struck in the head by a two-by-four board, hit with beer bottles, and had his head shaved with an electric razor. He was treated at Women's and Children's Hospital in Lake Charles, and was diagnosed as suffering from a contusion of his back, as well as a broken nose. Finally, Wal-Mart introduced evidence that Pauley complained of lower back pain after the vehicle he was riding in was struck from behind in March 1993. He was treated at Women's and Children's Hospital for complaints of lower back pain. Cervical and lumbar spine x-rays were normal. He was diagnosed as suffering from minimal cervical and lumbar sprains. Drs. Perry and Foster both testified that Pauley failed to relate these incidents of prior back pain to them.
Wal-Mart next raised a statement made by Pauley in his recorded statement that he had never been involved in any motor vehicle accidents prior to his alleged work-related injury. However, it introduced evidence of his January 19, 2001 accident and three prior accidents in which he was involved. He sustained a knee injury in a December 1998 accident, sustained injuries to his shoulder and neck in an October 1996 accident, and was involved in the March 1993 accident discussed above.
Wal-Mart's final allegation of fraud pertains to Pauley's explanation in his recorded statement as to why he failed to immediately report his February 15, 2001 work-related accident. In his statement, he explained that he did not report the accident immediately because this was the first time he had been hurt at his job. However, Wal-Mart introduced evidence that Pauley had suffered two prior work-related accidents, both while working at Pepper's Restaurant in Lake Charles. On November 24, 1996, he suffered a grease burn to his hand and was treated at Lake Charles Memorial Hospital; on September 13, 1997, he slipped and injured his right knee and received treatment at Women's and Children's Hospital. It further introduced evidence that Pauley underwent three days of orientation and received a handbook when he began working at Wal-Mart, which discussed the need to report all work-related accidents immediately.
Wal-Mart also introduced the testimony of Gregory Poteet and Jeremy Lindsay. Poteet, the Tire and Lube Express manager at the DeRidder Wal-Mart, testified that he was told by Lindsay that Pauley hurt his back while working on his truck at home. He further stated that he saw Pauley on the date of his accident between 6:00-6:30 a.m., and that he did not appear to be in pain at that time. He further testified that a member of management is always present at the store.
Lindsay testified that Pauley told him that he hurt his back during his January 19, 2001 accident and that he hurt it slightly while repairing his truck following the accident. However, while under cross examination, Lindsay admitted that he last spoke with Pauley in December 2000.
Pauley testified that he did not mention his prior back injuries in his associate statement, to Drs. Fowler, Perry, and Foster, or in his deposition because he either forgot about the injuries or because they were so minor he did not think they mattered. *761 With regard to his January 19, 2001 accident, Pauley testified that he had broken up with his girlfriend, so he loaded his belongings into his truck after getting off work at 7:00 a.m. He stated that he was traveling at thirty-five miles per hour between Longville and Lake Charles, when his load shifted causing his truck to veer off the road. He stated that he ended up in a ditch after he overcorrected the truck's movement. Pauley stated and that the accident occurred at approximately 7:30 a.m. He testified that he hit his head on the rearview mirror, but that he did not hurt his back. He further stated that he did not miss any work as a result of this accident.
Pauley testified that he was at Moss Regional on January 21, 2001, for a follow-up visit pertaining to his kidney stones and that his grandmother suggested he go to the emergency room because he was sore from the accident. He stated that the doctor prescribed him pain medication and recommended that he stop working for one week. However, he testified that he did not take the medication and did not miss work because he had already missed too much work due to the kidney stones. Pauley further testified that he saw Dr. Kwok, his urologist, on January 29, 2001, and that he told him that he was prescribed pain medication as a result of the January 19, 2001 accident, but that he was not taking it.
With regard to his January 13, 2000 assault, Pauley admitted that he was treated at Women's and Children's Hospital after the attack, and that he complained of moderate low back pain from being kicked in the back. He stated that he was diagnosed as suffering from a back contusion. With regard to the March 1993 auto accident, Pauley testified that he did not recall being involved in the accident, nor did he recall undergoing a back x-ray as a result of that accident.
When questioned about his answer that he had never been involved in any motor vehicle accidents prior to his work-related accident, Pauley testified that he either did not understand the question or that he did not hear the question. He further stated that someone was talking to him at the same time that Djuana Mabry, with Claims Management, Inc., was taking his statement.
Pauley further explained that he did not report his work-related accident before leaving work because he attempted to page a manager, but they failed to answer the page. He stated that he did not put this information in his associate statement or tell Mabry because he did not know that he was supposed to do so. He further stated that he told Mabry that he was unsure of what to do because this was the first time he had gotten hurt at this job. When she asked if this was his first workers' compensation claim, he stated that he thought that she meant his first claim at Wal-Mart.
Pauley testified that he graduated from A.M. Barbe High School in Lake Charles, and that he made A's and B's during his junior and senior years. However, he stated that he was in the lower level of his class during high school. Although he did not fail any classes in high school, he testified in his deposition that he failed the first and seventh grade and that he suffered from Attention Deficit Hyperactivity Disorder and Attention Deficit Disorder. He further stated that he attended Sowela Tech for one year studying automotive mechanics.
Holly Brumit, Pauley's grandmother, testified that Pauley suffers from phenylketonuria (PKU), a rare, inherited metabolic disease, and, as a result, he has a low I.Q., a hard time remembering, and is *762 easily confused and upset. Dr. Foster testified that this disease could have a definite affect on a person's thought processes, memory, and mental function, and that it could cause mental retardation. Dr. George Middleton, a clinic psychologist, evaluated Pauley when he was sixteen. His report reveals that Pauley suffered brain damage as a result of the late discovery of his PKU. Under his behavioral observations, Dr. Middleton states that Pauley's response style is inconsistent, "varying between careful and careless responses."
In her written reasons for judgment, the workers' compensation judge stated:
While the claimant's credibility was placed at issue, the court does not believe that his actions accelerate to 1208 fraud. The court does not accept low average intelligence as a reason not to tell the truth, but the court simply does not believe claimant deliberately made misrepresentations or omissions of fact for the purpose of collecting workers' compensation benefits.
The workers' compensation judge held that Pauley's omissions of fact were not willfully made. Since she was in the best position to determine whether Pauley was credible, her decision to credit his testimony must be given great deference. Rosell v. ESCO, 549 So.2d 840 (La.1989). The workers' compensation judge was presented with sufficient evidence to find that these omissions were inadvertent, considering that Pauley suffers from PKU. Even Dr. Foster stated that this condition could affect his mental thought processes. Accordingly, we cannot say that it was unreasonable for the workers' compensation judge to find that Pauley did not commit fraud and her judgment on this issue is affirmed; Wal-Mart's assignment of error is dismissed as being without merit.

PROOF OF ACCIDENT
Wal-Mart next argues that the workers' compensation judge erred in finding that Pauley proved that he suffered a work-related accident on February 15, 2001.
In order to receive workers' compensation benefits, a worker must first establish, by a preponderance of the evidence, "personal injury by accident arising out of and in course of his employment." La.R.S. 23:1031(A). As stated in Bruno v. Harbert International Inc., 593 So.2d 357, 361 (La. 1992):
A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979); Malone and Johnson, 13 Louisiana Civil Law Treatise, Workers' Compensation, § 253 (2d Ed.1980). Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Malone & Johnson, supra; Nelson [v. Roadway Express, Inc., 588 So.2d 350 (La.1991)], supra. Corroboration may also be provided by medical evidence. West, supra.

In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness's uncontradicted testimony, although the witness is a party, absent "circumstances casting suspicion on the reliability of this testimony." West, 371 So.2d at 1147; Holiday v. Borden Chemical, 508 So.2d 1381, 1383 (La. 1987). The trial court's determinations as to whether the worker's testimony is credible and whether the worker has *763 discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. Gonzales v. Babco Farms[Farm], Inc., 535 So.2d 822, 824 (La.App. 2d Cir.), writ denied, 536 So.2d 1200 (La.1988) (collecting cases).
Furthermore, findings of fact based on credibility determinations demand great deference on appeal. "[O]nly the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." Rosell, 549 So.2d at 844.
In her written reasons for judgment, the workers' compensation judge found that Pauley sustained his burden of proving a work-related accident by a bare preponderance of the evidence. She further stated that the evidence presented during the hearing substantiated his version of the accident, rather than casting doubt on it. A review of the record reveals that this finding is reasonable.
Pauley testified that he picked up a box of gallon containers of oil and turned to put it on the shelf when he felt his back pop. He stated that he immediately felt a tingling from his lower back to his toes. He testified that he left after his shift ended fifteen minutes later, and that the tingling feeling continued as he drove his truck, which was a standard, to his grandmother's home. He stated that he called her and told her to meet him at the hospital. However, she told him to go to her house and that she would take him to the hospital. He stated that she called Wal-Mart and was told to bring him there so he could fill out an accident report. After he did that, he said that Wal-Mart sent him to Dr. Fowler.
Dr. Fowler's medical records reveal that Pauley complained of pain in his right leg and that he exhibited tenderness over the mid "PSIS" and down the right leg. He also had decreased range of movement in his hip. On February 19, 2001, he had muscle spasms in his right, middle lumbar area, which radiated down his right leg. His gait was antalgic, favoring the left leg. Dr. Fowler's notes state that she was worried that he had a herniated disc, so she recommended an MRI. A February 28, 2001 MRI revealed a mild, broad-based, right paracentral-right lateral disc protrusion at L5-S1, with some compromise of the right neural canal. As a result of the MRI, Dr. Fowler referred Pauley to an orthopedist.
Dr. Perry examined Pauley on March 5, 2001, at which time he complained of lower back and right leg pain for the preceding three weeks after hurting himself while lifting boxes at work. Dr. Perry noted minimal motion in his lumbar spine, a positive straight leg raise test at twenty to twenty-five degrees when seated and lying down, positive cross straight leg raise test on the left when seated and lying down, and decreased sensation in the right L5 distribution. Dr. Perry testified in his deposition that these findings confirmed the findings of the MRI. He recommended an epidural steroid injection. Although this provided some relief to Pauley, he still exhibited symptoms at his next appointment on March 20, 2001. Dr. Perry then recommended a course of anti-inflammatory medication. When this failed to produce results by his next examination on April 3, 2001, Dr. Perry recommended that Pauley undergo a discectomy.
Dr. Foster examined Pauley at the request of Wal-Mart, on May 22, 2001. After reviewing the MRI and performing an examination, Dr. Foster felt that Pauley exhibited a classical herniated nucleus pulposus at L5-S1, on the right. He agreed *764 with Dr. Perry's recommendation of surgery.
Although Pauley did suffer previous back pain on three previous occasions, both Drs. Perry and Foster opined that his February 15, 2001 work-related accident caused the herniated disc based on the fact that he suffered no leg pain as a result of those prior incidents. While Dr. Foster did think that Pauley suffered from a pre-existing low back problem, he felt that the lifting incident precipitated the herniated disc and the right lower extremity pain. He stated that the reason he recommended surgery was because of the radicular leg pain, not just the lower back pain. None of the previous medical records reveal that Pauley suffered any leg pain when he was treated for lower back pain.
Additionally, Dr. Eulogio Tan, the emergency room doctor at Moss Regional on January 22, 2001, stated that Pauley exhibited tenderness at L4-5, but no neurological deficit. He further testified that he did not remember Pauley being in severe pain at the time of his examination. A back x-ray revealed no acute compression fracture and a narrowing of the L5-S1 intervertebral space. Dr. Tan stated that his impression was that Pauley was suffering from a lumbar sprain.
Moreover, both Brumit and Pauley's ex-girlfriend, Rosalena Nafe, testified that he did not suffer a back injury as a result of the January 19, 2001 automobile accident. Brumit stated that he only complained of soreness and that he did not miss any work as a result of the accident. She and Pauley both testified that they unloaded his truck after he reached Brumit's home, which was loaded with his chest of drawers, weight bench, weights, and clothes. Wal-Mart's records reveal that Pauley did not miss any work on January 20, 2001.
Considering the aforementioned evidence, we cannot say that the workers' compensation judge erred in finding that Pauley proved by a preponderance of the evidence that he suffered a work-related injury. Finding no manifest error, her judgment is affirmed on this issue.

EMPLOYMENT STATUS
In its final assignment of error, Wal-Mart argues that the workers' compensation judge erred in finding that Pauley was entitled to workers' compensation benefits as a full-time employee, rather than as a part-time employee.
Louisiana Revised Statute 23:1021(9) defines a part-time employee as "an employee who as a condition of his hiring knowingly accepts employment that (a) customarily provides for less than forty hours per week, and (b) that is classified by the employer as a part-time position." La.R.S. 23:1021(10)(a) provides in part:
(10) "Wages" means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows:
(a) Hourly wages.
(i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater; or
(ii) If the employee is paid on an hourly basis and the employee was offered employment for forty hours or more but regularly, and at his own discretion, works less than forty hours per week for whatever reason, then, the average of his total earnings per week for the four full weeks preceding the date of the accident; or

*765 (iii) If the employee is paid on an hourly basis and the employee is a part-time employee, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the injury.
However, La.R.S. 23:1021(10) "does not define full-time employment as requiring the employer to guarantee a forty-hour work week." East-Garrett v. Greyhound Bus Lines, 99 421, p. 4 (La.App. 3 Cir. 11/3/99), 746 So.2d 715, 719.
Pauley testified that he worked a set schedule Tuesday through Saturday, 10:00 p.m. to 7:00 a.m. The workers' compensation Telereporting Call-In Sheet lists him as a full-time employee. His 1998 employment application indicates that he was seeking "peak time" employment, which Wal-Mart defines as employment of less than twenty-eight hours per week. A form filled out by Pauley on February 22, 2000, indicates that he was not requesting a status change from part-time to full-time. However, there is a mark next to, "If YES, Part Time to Full time (over 28 hours)." Handwriting above this mark states, "Can'nt (sic) work Sun. + Mon. Can come on full time." Pauley testified that he transferred from a Lake Charles store to the DeRidder store at some point prior to his accident. Employment records from that store indicate that he worked in excess of twenty-eight hours per week from December 30, 2000 through January 19, 2001, and from January 27, 2001 through February 9, 2001.
Wal-Mart bases its argument that Pauley was not a full-time employee on the fact that he admitted that it had reduced his hours at the time of his work-related accident to twenty-five to thirty-two hours per week. Thus, it argues that he was no longer a full-time employee at the time of his accident, rather, he was a part time employee.
The workers' compensation judge held that Pauley was entitled to workers' compensation benefits as a full-time employee. The record contains conflicting evidence on this issue. Although Pauley may have begun his employment with Wal-Mart on a part-time basis, there is evidence to suggest that he was a full-time employee at the time of his accident. Since there is conflicting evidence on this issue, we cannot say that the finding of the workers' compensation judge is manifestly erroneous. Accordingly, this assignment of error is dismissed as being without merit.

ANSWER ON APPEAL
Pauley answered Wal-Mart's appeal arguing that the workers' compensation judge erred in finding that he was not entitled to penalties and attorney's fees for payment of the wrong indemnity rate, for its refusal to authorize the surgery recommended by Dr. Perry, and its failure to pay a medical bill. The workers' compensation judge denied Pauley's claim for penalties and attorney's fees finding that Wal-Mart reasonably controverted this claim. The decision to award penalties and attorney's fees is a question of fact which will not be reversed on appeal absent manifest error. Warren v. Maddox Hauling, 02-733 (La.App. 3 Cir. 12/4/02), 832 So.2d 1082. Wal-Mart's reason for refusing to authorize the surgery and denying payment of the medical bill was the alleged fraud committed by Pauley. We find this reason to be valid; accordingly, the workers' compensation judge's finding that Wal-Mart reasonably controverted this claim is affirmed.
However, we do find manifest error with regard to its failure to pay the correct indemnity rate to Pauley from the date it commenced payment of benefits through August 13, 2001. Pauley received $123.90 per week in compensation benefits rather *766 than $173.34 per week. In its brief, Wal-Mart states that Pauley "admitted that he knew that [it] was cutting back on hours because the store's payroll was too high." This is not a valid reason for failing to pay him at the correct rate. Pauley had no control over the number of hours Wal-Mart gave him each week, rather, this rested entirely within its control. Therefore, we find that the workers' compensation judge erred in failing to award him penalties and attorney's fees for Wal-Mart's miscalculation of his workers' compensation benefits. La.R.S. 23:1201. Accordingly, we award Pauley $2,000 in penalties and $5,000 in attorney's fees.
The judgment of the workers' compensation judge is amended to award Pauley penalties and attorney's fees for Wal-Mart's miscalculation of his weekly workers' compensation benefits. The judgment is affirmed with regard to the two remaining issues. Pauley also seeks additional attorney's fees for work performed on appeal. Considering our findings, we award him an additional $5,000 in attorney's fees for work performed by his attorney on appeal.

CONCLUSION
For the foregoing reasons, the judgment of the workers' compensation judge is amended to award Pauley $2,000 in penalties and $5,000 in attorney's fees for Wal-Mart's miscalculation of his weekly indemnity rate. The judgment is affirmed in all other respects. We further award Pauley an additional $5,000 in attorney's fees for work performed on appeal. The costs of this matter are assessed to the defendant-appellant, Wal-Mart Stores, Inc.
AFFIRMED AS AMENDED.