STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT
05-327 consolidated with 05-470

LOUIS SCALLON

VERSUS

BOISE CASCADE CORPORATION

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 03-8704
CHARLOTTE L. BUSHNELL, WORKERS' COMPENSATION JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Marc T. Amy, Judges.

**AFFIRMED.**

Jeffrey M. Cole
Plauche, Smith & Nieset
Post Office Drawer 1705
Lake Charles, LA   70602
(337) 436-0522
COUNSEL FOR DEFENDANT/APPELLANT:
    Boise Cascade Corporation

R. Scott Iles
Post Office Box 3385
Lafayette, LA   70502
(337) 234-8800
COUNSEL FOR PLAINTIFF/APPELLEE:
    Louis Scallon

AMY, Judge.

In this workers' compensation matter, the employee-claimant contested his employer's denial of his request to change orthopedic surgeons. The employer filed a claim for forfeiture of benefits and restitution, alleging that the employee's deposition testimony that he had never seen a doctor for back problems prior to the date of his alleged accident was falsely made in an attempt to obtain workers' compensation benefits in violation of La.R.S. 23:1208. After a hearing, the workers' compensation judge granted the employee's request to change orthopedic surgeons, denied the employer's claim that the employee committed fraud, and denied the employee penalties and attorney's fees. For the following reasons, we affirm the ruling and reject the employee's request for attorney's fees on appeal.

**Factual and Procedural Background**

The claimant, Louis Scallon, alleges that he was involved in a work-related accident on July 21, 2003, while working as an instrument technician with Boise Cascade Corporation ("Boise Cascade"). The claimant testified that as he was traversing a catwalk while checking the key way in a lime kiln in the paper mill, he fell and his foot became entrapped between a foot grating and a loose toe plate. He stated that he felt immediate pain and used his hand radio to call his supervisor. Mr. Scallon was taken by ambulance to Beauregard Memorial Hospital, where x-rays were taken.

The day after his alleged fall, Mr. Scallon visited his regular internist, Dr. Steven Farquhar complaining of severe back pain which radiated into his right leg. Dr. Farquhar ordered an MRI, which he stated revealed a bone fragment in the claimant's spinal canal. Dr. Farquhar testified that such a condition was beyond his

scope of treatment and suggested that the claimant undergo an orthopedic or neurosurgery evaluation.

Boise Cascade's company nurse also made an appointment for the claimant to visit Dr. Raggio, a neurosurgeon. Although the record does not contain Dr. Raggio's testimony or medical records, the claimant stated in his deposition that Dr. Raggio gave him an epidural, which the claimant said did "nothing" for him. He said that he discussed his concerns with Dr. Raggio's treatment with the company nurse, who he said informed him that he "had the right to go to another doctor."

The claimant met with Dr. Douglas McKay, an orthopedic surgeon who had performed an arthritis surgery on the claimant's elbows in October 2002. Dr. McKay met with the claimant on July 25, 2003, and determined that he had an acute herniation which may require surgery. However, because the University Medical Center where Dr. McKay was practicing could not accommodate the procedures or surgeries potentially necessary for the claimant's injury, he referred the patient to see Dr. David Muldowny, an orthopedic surgeon at the Lafayette Bone and Joint Clinic. However, the claimant had already made an appointment to see Dr. John Cobb, who is Dr. Muldowny's partner at the Lafayette Bone and Joint Clinic. Consequently, Dr. Muldowny deferred to Dr. Cobb to see the claimant. Although the record does not contain medical records or testimony from Dr. Cobb, the claimant stated that he recommended surgery to perform a lumbar discectomy and fusion.

Mr. Scallon alleges in his Petition for Worker's Compensation Benefits that Boise Cascade did not approve his visit with Dr. Cobb and "has refused to authorize the surgery as it is their position that claimant has already had his choice of orthopedic surgeon," namely, Dr. McKay. He filed an LDOL Form 1008 with the

2

Office of Workers' Compensation on December 2, 2003, seeking approval to be treated by Dr. Cobb, reimbursement for the cost of the initial office visit with Dr. Cobb, as well as penalties and attorney's fees.

On April 22, 2004, Boise Cascade filed an "Employer Provoked Dispute Seeking Forfeiture of Benefits and Restitution" claiming that Mr. Scallon had "violated Section 1208 of the Louisiana Workers' Compensation Act by testifying falsely, under oath, that he had never seen a doctor for low back problems or low back pain before the date of his alleged accident, July 21, 2003." At the subsequent trial, Boise Cascade presented excerpts from a deposition of Mr. Scallon that had been taken in association with a separate tort action brought in federal court by Mr. Scallon against BE&K Construction Company. Boise Cascasde intervened in that action and sent a representative to the deposition. In the deposition, the claimant stated that prior to the July 21, 2003 accident that forms the basis of the instant matter, he had never visited a doctor for any type of low back pain or problem or any type of right leg problem before his alleged fall at Boise Cascade. Boise Cascade also presented testimony taken in depositions of Drs. Farquhar and McKay that the claimant had visited them both for complaints of pain in his lower back radiating into his right leg and groin area on numerous occasions prior to July 21, 2003. Boise Cascade additionally presented the deposition of Dr. James E. Jenkins, a chiropractor who had treated the plaintiff for low back pain in the months before his alleged fall on July 21, 2003.

Mr. Scallon's claim and Boise Cascade's claim were consolidated for the purposes of the trial, which was held on September 16, 2004. The workers' compensation judge granted Mr. Scallon's request to change orthopedic surgeons to

3

Dr. Cobb, denied Boise Cascade's La.R.S. 23:1208 fraud claim, and found that Boise Cascade had reasonably controverted Mr. Scallon's claim for penalties and attorney's fees.

Boise Cascade has suspensively appealed this decision, asserting that the trial court erred in "its determination the employer failed to meet its burden of proof required for the application of [La.R.S.] 23:1208 and by failing to order termination of worker's compensation benefits and restitution of prior benefits paid to the employee[]" and in "ordering a change of physician for the employee." Mr. Scallon answered the appeal, asserting that the trial court erred in denying its request for attorney's fees at trial, and also requesting attorney's fees for work done in defense of the appeal.

## Discussion

### Forfeiture of Benefits

In its first assignment of error, Boise Cascade argues that the trial court erred in denying its claim for forfeiture of Mr. Scallon's benefits under La.R.S. 23:1208.

Louisiana Revised Statutes 23:1208 governs the consequences of false statements made by parties in connection with a workers' compensation claim. It provides, in part:

> A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
>
> . . . .
>
> D. In addition to the criminal penalties provided for in Subsection C of this Section, any person violating the provisions of this Section may be assessed civil penalties by the workers' compensation judge of not less than five hundred dollars nor more than five thousand dollars, and may be ordered to make restitution. Restitution may only be

4

ordered for benefits claimed or payments obtained through fraud and only up to the time the employer became aware of the fraudulent conduct.

E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

The Louisiana Supreme Court has interpreted La.R.S. 23:1208 as providing for the forfeiture of workers' compensation benefits when a claimant (1) makes a false statement or representation; (2) that statement or representation is willfully made; and (3) the false statement or representation is made for the purpose of obtaining or defeating any benefit or payment. *Resweber v. Haroil Constr. Co.*, 94-2708 (La. 9/5/95), 660 So.2d 7. A forfeiture pursuant to La.R.S. 23:1208 is not necessary where the false statement is inconsequential or was made inadvertently. *Jeanise v. Cannon*, 04-1049 (La.App. 3 Cir. 2/23/05), 895 So.2d 651. "Forfeiture of benefits under La.R.S. 23:1208 is a harsh remedy which must be strictly construed." *Regan v. Eunice Superette, Inc.* 04-227, p.5 (La.App. 3 Cir. 9/29/04), 884 So.2d 1209, 1213. A workers' compensation judge's determination whether an employee has forfeited his or her right to workers' compensation benefits is a finding of fact that will not be reversed on appeal in the absence of manifest error. *Smith v. Quarles Drilling Co.*, 99-171 (La.App. 3 Cir. 6/2/99), 741 So.2d 829, *writ denied*, 99-1949 (La. 10/8/99), 751 So.2d 227.

In its argument, Boise Cascade focuses on a statement made by the claimant in a deposition he provided for a separate lawsuit in federal court. In that deposition, the claimant discussed the nature of his physical condition before July 21, 2003, the details of the alleged fall at issue in the present matter and his treatment thereafter.

5

Specifically, Boise Cascade points to the following exchange between Mr. Scallon

and the attorney for the construction company defendant in that matter:

Q   Before July 21, 2003, had you ever had low back pain or a low
    back problem that you saw a doctor for?

A   No, I never saw a doctor.  You know, I've had little problems. I
    have rheumatoid arthritis, you know, and I – I've had pains there
    before, you know, but nothing like what I got now.

Q   Well, I understand that.  But my question is pretty specific.  Did
    you ever go see a doctor for any type of low back problem or low
    back pain that you had been experiencing before July 21, 2003?

A   No, sir.

Q   What about your right leg, before July 21, 2003, had you ever
    gone to see a doctor for any type of right leg or right lower
    extremity problems?

A   Knee – like my knee or something.

Q   Well –

A   My knees swell up.

Q   That's from the arthritis?

A   The arthritis, and I have to get like a steroid shot.  They'll drain
    it and get a steroid shot in it, and I'm good to go.

Q   Okay.  Well, let's talk about, though, the right leg pain excluding
    the knee problem –

A   Okay.

Q   – that you may have had beforehand.  Any right leg or right-sided
    problems that you saw any doctor for before July 21, 2003?

A   No, sir.

Q   Now, I understand that you had arthritis before this incident; is
    that correct?

A   Yes, that's correct, for about ten years.

Q    Okay. And that arthritis would have been a generalized type of arthritis, or did it effect specific parts of your body?

A    One day to the next, you didn't never know where it was going to be. It could – mostly, it was in my wrists, elbows, knees and ankles.

Q    The joints?

A    In my, you know, limb joints –

Q    All right.

A    – outer, you know.

Q    Any arthritic problems, say, to your spine before this incident.

A    No, sir.

Boise Cascade argues that Mr. Scallon's medical records contradict these statements, and that Mr. Scallon knew that he needed a back surgery prior to his alleged fall. Boise Cascade further contends that Mr. Scallon actually made these false statements to ensure that Boise Cascade would authorize his treatment with Dr. Cobb, including the back surgery, and to help in his case against BE&K Construction Company. Mr. Scallon, however, asserts in his appellate brief that he was interrupted as he attempted to answer the question regarding previous back problems and that his misstatement was not intentional. Mr. Scallon states on appeal that this misstatement in a third party deposition was "in no way related to an effort to obtain worker's compensation benefits."

Although Mr. Scallon acknowledges in his appellate brief that his denial of prior treatments was a misstatement, he also attempts to minimize the extent of the previous back problems and treatments on appeal. However, the workers' compensation judge was free to find that the statements made by Mr. Scallon in his deposition are inconsistent with the statements made by his treating physicians. Dr.

7

Farquhar stated in his deposition that Mr. Scallon had visited his office with complaints of low back pain in November 2002, and that he had diagnosed Mr. Scallon with chronic back pain and prescribed him an anti-inflammatory medication and a medication for pain. Dr. McKay stated that Mr. Scallon also visited his office regarding the pain, which the claimant reported as "severe" and radiating down his right leg. Mr. Scallon also visited a chiropractor, Dr. James Jenkins, for an adjustment twice in November 2002 with complaints of low back pain radiating into his right leg. Dr. Jenkins stated that Mr. Scallon visited his office in March, April, and May 2003 with complaints of low back pain. We also note that Dr. Farquhar stated that Mr. Scallon visited his office again with complaints of right-sided back pain that radiated into his right testicle on July 3, 2003, which was eighteen days before the accident at issue. Similarly, Dr. Jenkins said that Mr. Scallon visited his office with similar complaints on July 3, 7, 8 and 11.

The record does not contain the medical records from these appointments, but Mr. Scallon has not disputed his attendance. Instead, he contends that his back problems and treatments were minimal. Given the testimony provided by the three physicians in their depositions, the record supports the workers' compensation judge's statement that there were "inconsistencies in the evidence and the claimant's testimony." However, despite this finding, the workers' compensation judge also stated that:

> [T]he court does not find that the claimant's testimony rises to the heightened burden of proof set forth in the fraud statute. Granted, the claimant was not a paradigm of good health; his impulse response that he had never seen a doctor was not an indication of any intent or scheme to commit 1208 fraud to collect workers' compensation benefits. The court does not find this individual a person intending to steal or commit fraud. The inconsistencies may draw questions as far as claimant's credibility is concerned; but given the totality of the circumstances, the

inconsistent statements were not made for the willful purpose of collecting workers' compensation benefits.

Likewise, our review of the record in its entirety reveals that Boise Cascade has presented no evidence beyond the statements themselves to support its claim that the statements were fraudulently offered in order to obtain benefits. We note that the claimant had been employed with Boise Cascade for more than thirty years at the time of his injury. Furthermore, he stated in his deposition that he was able to obtain medical attention when necessary due to the health insurance policy he maintained through Boise Cascade, or through the Veteran's Administration due to his status as a military veteran. Although the workers' compensation judge noted inconsistences in the claimant's testimony, she was in the best position to determine the claimant's overall credibility and we will not disturb her reasonable inferences of fact. *See Rosell v. ESCO,* 549 So.2d 840, 844 (La.1989) ("When findings are based on determinations regarding the credibility of witnesses, the manifest error--clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said."). The evidence supports a finding that Boise Cascade failed to prove that those inconsistencies were willfully made for the purpose of obtaining benefits, the intent required to determine fraud under La.R.S. 23:1208. Therefore, we conclude that the workers' compensation judge was not manifestly erroneous in denying Boise Cascade's motion for sanctions against Mr. Scallon. This assignment lacks merit.

*Change of Treating Physician*

In its appellate brief to this court, Boise Cascade stated as follows:

9

[The] appellant readily concedes that if Louis Scallon is entitled to worker's compensation benefits because Section 1208 does not apply in the present case, the Order of the lower court allowing Scallon to change physicians was proper. In order to reserve all of its rights and remedies under Section 1208, appellant assigns as error the Court's Order allowing a change of physician. Basically, it is the position of the appellant that Scallon is not entitled to a change in his choice of physician because Scallon is not entitled to any benefits pursuant to Section 1208 of the Louisiana Workers' Compensation Act.

Because we have already found that the workers' compensation judge did not err in finding that Mr. Scallon did not willfully make a false statement or representation for the purpose of obtaining workers' compensation benefits, we need not consider this assignment of error.

*Penalties and Attorney's Fees*

The claimant answered Boise Cascade's appeal, alleging that the workers' compensation judge erred in failing to grant attorney's fees due to Boise Cascade's failure to authorize his physician change request. Mr. Scallon argues that Boise Cascade arbitrarily and capriciously denied his request in violation of his statutory entitlement to one physician of his choice. La.R.S. 23:1121;[1] La.R.S. 1201(I).[2]

---

[1] Louisiana Revised Statutes 23:1121(B) states, in relevant part:

B. (1) The employee shall have the right to select one treating physician in any field or specialty. The employee shall have a right to the type of summary proceeding provided for in R.S. 23:1124(B), when denied his right to an initial physician of choice. After his initial choice the employee shall obtain prior consent from the employer or his workers' compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.

[2] Louisiana Revised Statutes 23:1201(I) provides:

Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims.

Boise Cascade, however, asserts that because Mr. Scallon committed fraud under La.R.S. 23:1208, the workers' compensation judge was proper in denying him penalties and attorney's fees. Alternatively, Boise Cascade contends that it had a reasonable basis for asserting the fraud defense, which constituted sufficient grounds for the denial of the claimant's request to change physicians.

La.R.S. 23:1201(F) directs that an employer's failure to consent to an employee's request to select a treating physician shall result in the assessment of a penalty which shall not exceed a maximum of two thousand dollars for any claim, together with reasonable attorney's fees. However, if the claim is reasonably controverted by the employer, penalties and attorney's fees shall not be awarded. La. R.S. 23:1201(F)(2). "The employee's right to . . . benefits will be deemed reasonably controverted if the employer or insurer had a reasonable basis for believing that medical expenses and compensation benefits were not due the employee." *Landry v. City of New Iberia*, 96-783, p. 8 (La.App. 3 Cir. 2/5/97), 689 So.2d 564, 568-69.

The workers' compensation judge's decision to award penalties and attorney's fees is a question of fact which is reviewed under the manifest error standard of review. *Pauley v. Wal-Mart Stores, Inc.*, 02-1354 (La.App. 3 Cir. 6/4/03), 847 So.2d 757, *writ denied*, 03-1884 (La. 11/21/03), 860 So.2d 544. In the instant matter, the workers' compensation judge noted "inconsistencies" in the evidence and the claimant's testimony, which she stated in her reasons for judgment "may draw questions as far as claimant's credibility is concerned[.]" Although the workers' compensation judge concluded that the inconsistent statements did not amount to a violation of La.R.S. 23:1208 on the part of the claimant, they merited sufficient significance for her to address them in her reasons for judgment.

11

Boise Cascade's reason for refusing to authorize the change of physicians was the alleged fraud committed by Mr. Scallon. "[A]n employer should not be penalized for bringing a close legal issue to court." *Burruss v. Centro Mgmt., Inc.*, 00-1274, p. 2 (La.App. 3 Cir. 2/28/01), 780 So.2d 630, 631. Although the workers' compensation judge was not manifestly erroneous in her determination of the La.R.S. 23:1208 question, our review indicates that the record supports a finding that there was sufficient evidence for Boise Cascade to propound the issue. We conclude that Boise Cascade reasonably controverted Mr. Scallon's claim. Accordingly, we affirm the workers' compensation judge's denial of attorney's fees and concomitantly decline to award attorney's fees for the work performed on appeal.

**DECREE**

For the foregoing reasons, we affirm the judgment of the workers' compensation judge in all respects and reject Louis Scallon's request for attorney's fees on appeal. We assess all costs of this proceeding to Boise Cascade Corporation.

**AFFIRMED.**

12