844 So.2d 168 (2003)
Keith and Betty HUTCHINS
v.
LIBERTY MUTUAL INSURANCE COMPANY, et al.
No. 02-CA-943.
Court of Appeal of Louisiana, Fifth Circuit.
March 25, 2003.
Writ Denied June 20, 2003.
*170 Freeman R. Matthews, Craig E. Frosch, Usry, Weeks & Matthews, New Orleans, LA, for defendant-appellant.
Edward F. Downing, III, Gauthier, Downing, Labarre, Beiser & Dean, Metairie, LA, for plaintiffs-appellees.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD, THOMAS F. DALEY, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.
On June 4, 1997 at about 7:15 a.m., Keith Hutchins ("Hutchins") was driving his vehicle on Barton Avenue. He approached the intersection with Highway 90 and attempted a left turn. The traffic light at this intersection is normally a sequential light, which changes from green to yellow and then to red. That morning the light was flashing red for traffic on Barton Ave. and flashing yellow for traffic on Highway 90. As Barton attempted to turn left onto Highway 90, he was struck by a truck with a flatbed trailer that was proceeding westbound on Highway 90 and being driven by Eugene Farris ("Farris").
Hutchins and his wife, Betty, filed suit against the truck driver, Farris, the truck owner and Farris' employer, Skipper Transportation, its insurer, Liberty Mutual Insurance Company, the Louisiana Department of Transportation and Development ("DOTD") and the St. Charles Parish Sheriff ("Sheriff's Office"). Prior to trial, the plaintiffs entered into a settlement with Farris, Skipper Transportation and Liberty Mutual and the claims against those defendants were dismissed. The plaintiffs proceeded to trial against the Sheriff's Office and the DOTD. Following the trial, the trial court issued a judgment dismissing the plaintiffs' claims against the DOTD. The trial court then found in favor of the plaintiff and allocated fault as follows: 70% to Hutchins, 15% to the Sheriff's Office and 15% to Farris.
*171 The Sheriff's Office now appeals arguing three assignments of error. First, the Sheriff's Office argues that the trial court erred in concluding that the Sheriff's Office breached its duty and was at fault in the collision because no deputy was dispatched to warn motorists that the traffic control lights at the intersection were flashing. Second, the Sheriff's Office argues the trial court erred in finding that a lack of early notice to the DOTD that the traffic lights were flashing was the legal cause of the accident when the driver on the non-favored road failed to stop and yield the right of way. And third, the Sheriff's Office argues the trial court erred in allocating 15% fault to the Sheriff where the accident was caused by the failure of the plaintiff to obey the flashing red light.
For the following reasons, we affirm the trial court's finding that the plaintiff's own negligence was a contributing cause in the accident and that Farris' negligence was also a contributing cause in the accident. Further, we affirm the trial court's findings that the Sheriff's Office did not timely notify the DOTD of the malfunction and that the Sheriff's Office had a duty to dispatch a deputy to the intersection and failure to do so was a contributing cause in the accident. However, we amend the trial court's apportionment of fault and find that the Sheriff's Office was 5 % at fault, the truck driver, Farris, was 10% at fault and the plaintiff, Hutchins, was 85% at fault in the cause of the accident. We also affirm the trial court's finding that the DOTD was not at fault in causing this accident.
In its first assignment of error, the Sheriff's Office argues that the flash mode for the traffic light is authorized by statute and does not create an unreasonable risk of harm to the motoring public sufficient to impose a duty on the Sheriff's Office to dispatch law enforcement officers to the scene. Plaintiffs argue in opposition that the flashing signal did create an unreasonable risk of harm because it occurred during morning rush hour in a busy and confusing intersection.
The trial court found that the DOTD has determined that the sequencing mode for traffic lights is the safest and the next safest mode is the flashing mode, which is why the traffic light defaults to flashing mode if the sequencing mode fails. The trial court also concluded that the flashing mode is the best short-term solution to a malfunctioning traffic light and is better than a completely inoperable traffic light. The trial court found that the traffic light in the flashing mode presented an unreasonable risk of harm to the motoring public. The trial court based this finding on its conclusion that the DOTD quickly fixes the traffic light back to the sequencing mode and only views the flashing lights as a temporary fix to avoid a completely uncontrolled intersection.
We agree that the flashing traffic lights in this case did create an unreasonable risk of harm to the motoring public. We do recognize that the flashing mode is authorized by statute, however, Highway 90 is a four lane, busy highway with a speed limit of 45 miles per hour at this location. The malfunction of the light occurred at a time of day when the traffic is heavy. At this type of intersection, the flashing mode is only meant to be a temporary back-up in case of malfunction. Therefore, we find that the flashing light at this intersection did pose an unreasonable risk of harm to the motoring public.
Next, we must address whether this unreasonable risk of harm imposed a duty upon the Sheriff's Office to dispatch an officer to the scene and, if so, did the Sheriff's Office breach this duty. When a law enforcement officer becomes aware of a dangerous traffic situation, he has the *172 affirmative duty to see that motorists are not subjected to unreasonable risks of harm. Syrie v. Schilhab, 96-1027 (La.5/20/1997), 693 So.2d 1173, 1176-1177, citing Monceaux v. Jennings Rice Drier, Inc., 590 So.2d 672, 675 (La.App. 3d Cir. 1991). According to Scott Hargrove, a St. Charles Parish Sheriff's 911 operator, a call was received at 5:30 a.m. from a passerby informing the Sheriff's Office of the malfunctioning traffic light. This call was documented in the 911 telephone records at 8:48 a.m. Mr. Hargrove testified that he received the call during the shift change when he was coming on duty and logged it later in the morning.
According to Mr. Hargrove's testimony, the Sheriff's Office knew of the malfunctioning traffic light, which has been determined to be an unreasonable risk of harm to the motoring public. Therefore, the Sheriff's Office had a duty to make sure the motorists were not subjected to this unreasonable risk of harm. This could be accomplished by dispatching an officer to the location to control traffic. According to the testimony presented at trial, the Sheriff's Office failed to dispatch an officer to the intersection. Therefore, it breached its duty to the motoring public.
The Sheriff's Office argues as assignment of error number two that the trial court erred in finding that a lack of early notice to the DOTD that the traffic signals were in flashing mode was a legal cause of the accident. Mr. Hargrove, the 911 operator, received the call regarding the malfunction around 5:30 a.m. He testified that he also contacted the DOTD to report the problem in order that the DOTD would fix the malfunction. His log book indicates he called the DOTD at 5:30 a.m. but he did not log the call into the book until 8:48 a.m. Mr. Hargrove testified that he did not specifically remember making the call to the DOTD, but knows he must have because it is his job. Ruth Frizell, the DOTD radio operator on duty that morning, testified that she did not receive a call from Mr. Hargrove. There was no complaint recorded in the telephone log at 5:30 a.m. regarding this intersection.
Gary Angelo, a DOTD employee, did call and report the malfunctioning light to the DOTD at 6:59 a.m. This complaint was logged into the telephone log. After Mr. Angelo's complaint was received, Ms. Frizell dispatched a crew to fix the malfunctioning light. The accident occurred one hour and forty-five minutes after the 5:30 complaint call was received by the Sheriff's Office. We agree with the trial court's finding that more likely than not Mr. Hargrove failed to notify the DOTD of the malfunction at 5:30 a.m. As a result, a crew was not dispatched at 5:30 a.m. to fix the light and it was still malfunctioning at the time of the accident. Therefore, we find the Sheriff's Office's failure to timely notify the DOTD of the malfunction was a contributing factor in causing the accident.
In addition to the assignments of error presented by the Sheriff's Office, we also find that the plaintiff, Hutchins, and the truck driver, Farris, were both at fault in this accident. Hutchins had a duty to stop at the flashing red light and to proceed only when safe. According to the testimonies presented at trial, he failed to stop. Therefore, he failed to yield the right-of-way to Farris and any other traffic on Highway 90 and was negligent. This negligence was a contributing factor in the cause of the accident.
Farris was also at fault in this accident. He testified that he had driven on Highway 90 before and knew that the light was supposed to cycle. He testified that he assumed the light was not working when he saw it flashing. He was also *173 traveling at or above the speed limit. The speed limit was 45 miles per hour for this section of Highway 90. He testified that he was traveling between 45 and 50 mph and had slowed when he saw the flashing light. Having traveled this section of highway before, Farris must have known that the area is usually busy with lots of traffic. Therefore, we agree with the trial court that Farris was negligent for driving in that manner through the yellow flashing light. We further agree that Farris' negligence contributed to the cause of the accident.
Although we agree with the trial court's findings concerning negligence and liability, we do not agree with the apportionment of fault applied by the trial court. As stated in Duncan v. Kansas City Southern Railway Co., 00-0066 (La.10/30/00) 773 So.2d 670, an appellate court's determination of whether the trial court was clearly wrong in its allocation of fault is guided by the factors set forth in Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985). In Watson, the Supreme Court said that "various factors may influence the degree of fault assigned, including:
(1) [W]hether the conduct resulted from inadvertence or involved an awareness of danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capabilities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties."
Duncan, 773 So.2d at 681, citing Watson, 469 So.2d at 974.
Applying these factors to this case, we find that the trial court was manifestly erroneous in assigning the apportionment of fault. The trial court only found the plaintiff, Hutchins, to be 70% at fault. As discussed above, Hutchins had a duty to stop at the flashing red light and to only proceed when safe. He did not stop and proceeded directly into the path of the Farris' truck. Therefore, we find he was 85% at fault in causing the accident.
The trial court found Farris to be 15% at fault. We find this percentage to be high and find that Farris was only 10% at fault in causing the accident. Farris was traveling at a high speed considering the time of day and highway conditions, including the fact that the light was flashing yellow. He had a duty to proceed cautiously through the flashing yellow light. He failed to do this and was negligent. Therefore, we apportion 10% fault to Farris.
Finally, the trial court found that the Sheriff's Office was 15% at fault. Although we agree that the Sheriff's Office did breach its duty to dispatch an officer to the scene of the intersection and failed to timely notify the DOTD of the malfunctioning light, we find that this apportionment of fault is too high. The presence of an officer at the intersection may have helped control the traffic, but the negligence of both drivers in this case obviously outweighs any help an officer could have provided. Therefore, we apportion 5% fault to the Sheriff's Office.
In accordance with the above, we affirm the trial court's findings that the Sheriff's Office had a duty to dispatch an officer and that it breached that duty. Further, we affirm the trial court's finding that the Sheriff's Office failed to timely notify the *174 DOTD of the malfunctioning light. Finally, we affirm the trial court's findings that Hutchins and Farris were both negligent and at fault in causing this accident. We amend the trial court's judgment concerning apportionment of fault as follows: 5% to the Sheriff's Office, 10% to Farris and 85% to Hutchins.
JUDGMENT AMENDED; AS AMENDED, AFFIRMED.
DUFRESNE, J., concurs.
DALEY, J., concurs with reasons.
CHEHARDY, J., concurs.
GOTHARD, J., dissents.
DALEY, J., concurring with reasons.
I concur with the majority's disposition in this case, but not entirely with the reasoning set forth in the opinion.
I agree that the St. Charles Sheriff's Office's negligence was a contributing factor in the cause of the accident. However, I disagree with that portion of the majority's opinion that holds that the failure of the Sheriff's Office to dispatch a deputy to the intersection was a contributing factor and the cause of this accident. I agree that the Sheriff's Office's failure to timely notify DOTD that the traffic light was not operating in its normal mode after the 911 Operation Center had been notified by a citizen of the condition was a contributing factor.
DUFRESNE, J., concurs. I agree with Judge Daley and will join in his concurrence.
CHEHARDY, J., concurs. I agree with Judge Daley and will join in his concurrence.
GOTHARD, J., dissenting.
I dissent. In my view, the majority opinion in this case changes the allocations of fault without a legal basis. This court is a court of review, not a court of first impression.
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. In applying the manifestly erroneous clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.
(citations omitted)
Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989)
That same, "clearly erroneous" standard must be applied in our review of the allocation of fault. Clement v. Frey, 95-1119 (La.1/16/96), 666 So.2d 607. Given the trial courts well-written reasons, and the facts of this case, I cannot find any support for the majority's finding that the trial court was clearly wrong in its allocation of *175 fault. Accordingly, I would affirm the trial court judgment without amendment.