| .PEATROSS, J.
This appeal arises out of an automobile accident that occurred in Bastrop, Louisiana which killed William Trippe and left his daughter, Terri Degges, and grandson, Joshua Degges, severely injured. After a one-week trial, the jury found that no conduct of the DOTD created an unreasonably dangerous condition at the intersection where the accident occurred and apportioned 100% of the fault for the accident to Mr. Trippe. Ms. Degges and her son appeal the jury’s finding, arguing that an unreasonably dangerous condition existed at the time of the accident and the that DOTD should bear some of the liability of this case. For the reasons set forth herein, we affirm.

FACTS

On March 19, 1999, at approximately 7:00 p.m., following a shopping trip to the local Wal-Mart in Bastrop, Louisiana, Mr. Trippe, his daughter, Ms. Degges, and her 13-year-old son, Joshua, were involved in an automobile accident that killed Mr. Trippe and left the two passengers with serious injuries. The Trippe/Degges vehicle [1] was second in line at the East Madison Street stop light as they exited the Wal-Mart parking lot. Unfortunately, at the precise moment their vehicle was attempting its exit, the traffic control system at East Madison Street changed its function as an ordinary sequenced light (a traditional red-yellow-green light) to a flashing control (which gave a yellow flashing signal to traffic on East Madison and a red flashing signal to traffic exiting from the Wal-Mart parking lot.)[2] The plead car entered traffic and narrowly escaped a collision; however, the Trippe/Degges vehicle was struck by an oncoming 18-wheel-er. The collision killed Mr. Trippe and left Ms. Degges and Joshua with severe injuries.
On July 7, 1999, Ms. Degges and her four siblings filed suit in Morehouse Parish for wrongful death of their father (she also made claims regarding her own injuries and those of Joshua). At the time of trial, all defendants, with the exception of the DOTD, had been dismissed. During trial, Sgt. Anthony Evans of the Bastrop Police Department testified that there were no *390 vision impediments or any road defects that contributed to the collision. Following the trial court’s ruling, Ms. Degges, et al (collectively referred to as “Ms. Degges” for our purposes) filed a motion for judgment n.o.v., which was denied.

DISCUSSION

Assignment of Error One (verbatim): The trial court erred in concluding that no conduct of the DOTD created an unreasonably dangerous condition at the intersection.

Ms. Degges initially points out that the East Madison traffic signal was installed in 1987 and the sequenced signal was (originally) designed to flash between 7 a.m. and 8 p.m. After a study by the district traffic engineer in 1991, the sequence was changed from 7:00 a.m. to 9:15 p.m. to reflect the change in traffic conditions after the Wal-Mart was built. (She notes that, in February 1997, an accident occurred at the intersection which required the DOTD to repair the traffic signal. The crew making the repair set the traffic 1 atimer back to 7:00 p.m. rather than 9:15 p.m. because the DOTD paperwork did not reflect the 1991 change.)
She further cites a balancing test that courts have developed for determining whether or not a particular condition is “unreasonably dangerous.” In Entrevia v. Hood, 427 So.2d 1146 (La.1983), the court stated, inter alia:
[I]t has been suggested that a useful approach in a case under article 2317 might be to ask the following: If the custodian of the thing is presumed to have knowledge of its condition before plaintiffs injury, would he then have been acting reasonably by maintaining it and exposing others to it?
Ms. Degges submits that this inquiry deals with the “essential similarity” between the strict liability and negligence standard by “removing from the equation the question of defendant’s knowledge of the condition.” She points out that Entrevia, supra, was discussed in T. Galligan, Jr., Strict Liability in Action: The Truncated Learned Hand Formula, 52 La. L.Rev. 323, which stated, in part:
Consequently, one might say that in strict liability cases, courts presume that the defendant has knowledge of the dangerous characteristic of its product or thing and then ask whether or not a defendant with knowledge of the dangerous characteristic of the thing or product would use, keep, or sell it in that condition. If the person who had knowledge would be negligent (or unreasonable) for using, keeping or selling a thing or product in its injury-causing condition, then the product or thing presents an unreasonable risk of harm and the defendant is liable — strictly liable.
Ms. Degges argues that the jury in the case sub judice was required to make two decisions: (1) what was the defect? and (2) did the defective condition present a risk of harm that was unreasonable under the circumstances? She asserts that, given the DOTD’s paperwork error discussed, supra, the defect here was simple to identify (and was, she Largues, the DOTD’s responsibility). To satisfy the second inquiry, she points to Reed v. Wal-Mart Stores, Inc., 1997-1174 (La.3/4/98), 708 So.2d 362, which held:
In determining whether a defect presents an unreasonable risk of harm, the trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair. Simply put: The trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others? [Citations omitted.]
*391 She states that the gravity and risk of harm are evident here by virtue of the fact that Mr. Trippe lost his life and the Deg-geses suffered severe injuries. Ms. Degg-es points out that, in Hutchins v. Liberty Mutual Ins. Co., 02-943 (La.App. 5th Cir.3/25/03), 844 So.2d 168, writs denied, 03-1166 (La.6/20/03), 847 So.2d 1237; 03-1089 (La.6/20/03), 847 So.2d 1240, the fifth circuit characterized a flashing traffic control as posing an unreasonable risk of harm to the motoring public when that condition continued for several hours at a busy intersection.[3] Similarly, in Murray v. Ramada Inns, Inc., 521 So.2d 1123 (La.1988), the supreme court stated:
Thus, in any case where the defendant would otherwise be liable to the plaintiff under a negligence or strict liability theory, the fact that the plaintiff may have been aware of the risk created by the defendant’s conduct should not operate as a total bar to recovery. Instead, comparative fault principles should apply, and the victim’s awareness of the danger” is among the factors to be considered in assessing percentages of fault.
Similarly, in Toston v. Pardon, 03-1747 (La.4/23/04), 874 So.2d 791, a “T-intersection” (where an automobile accident had occurred) maintained | Bby the DOTD presented an unreasonable risk of harm due to restricted sight distance.
Given the aforementioned jurisprudence and facts of this case, Ms. Degges argues .that it is an “irrational” conclusion to find that the DOTD would go to the expense of conducting a detailed traffic study in 1991 (and implement said study’s findings) and six years later, for no readily apparent reason, return the signal to a setting that its own study found unsafe. From this, Ms. Degges submits that the only explanation for this change was the negligence of the DOTD; and, accordingly, it “is easy to see that the jury’s [finding in this case] was manifestly erroneous.”[4]
In response, the DOTD initially points to the standard of review for this case. It states that the question of whether or not an intersection posed an unreasonable risk of harm is one of fact. Gray v. State ex rel. DOTD, 00-7 (La.App. 5th Cir.5/17/2000), 761 So.2d 760, writ denied, 00-2369 (La.11/3/00), 773 So.2d 146. Courts have consistently held that whether or not an intersection poses a threat of unreasonable risk is a question of fact. Ledoux v. State, Through DOTD, 98-0024 (La.9/18/98), 719 So.2d 43; Cormier v. Comeaux, 98-2378 (La.7/7/99), 748 So.2d 1123. Accordingly, the DOTD states that the manifestly erroneous/clearly wrong standard of review applies to this case, under Rosell v. ESCO, 89-067 (La.10/12/1989), 549 So.2d 840 and Stobart v. State Through DOTD, 92-1328 (La.1993), 617 So.2d 880. Further, this court may not reverse, even if convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Reider v. State ex rel. Louisiana *392 Board of Trastees, 04-1403 (La.App. 3d Cir.3/9/05), 897 So.2d 893, writ denied, 05-0938 (La.2005), 902 So.2d 1056.
The DOTD argues that this court should affirm the trial court’s ruling for two reasons: one, the record contains an adequate and substantial basis for the jury’s findings (that no unreasonably dangerous condition existed); and two, even if Ms. Degg-es had been able to prove negligence by the DOTD, she would not have proven causation because Mr. Trippe was himself “grossly negligent” in his operation of the car when the accident occurred.[5]
The DOTD cites a bevy of statutes for the proposition that a driver is bound to obey the sequence of a traffic control signal, unless a police officer is directing traffic.[6] In Thomas v. Petrolane Gas Servs. Ltd. Part., 22,774 (La.App. 2d Cir.1991), 588 So.2d 711, writ denied, 590 So.2d 1201 (La.1992), this court stated that “[a] vehicle ... intending to turn left within an intersection shall yield to oncoming traffic that is within the intersection or so close thereto as to constitute an immediate hazard.” (Emphasis added.) Similarly, “the left turn has been held to be the most dangerous maneuver a motorist may execute, and great caution should always be taken.” Thomas, supra. “Many things can distract a motorist. A motorist has a duty, however, to keep his attention focused on the roadway. Paul v. Louisiana State Employees’ Group Ben. Program, 99-0897 (La.App. 1st Cir.5/12/00), 762 So.2d 136.
While the DOTD has an affirmative duty to construct and maintain the state’s highways in a reasonably safe condition, it is not responsible for every accident which occurs on state highways, nor is it a guarantor of the safety of travelers or an insurer against all injury which may result from obstructions or defects in the highway. Melder v. State, Through Dept. of Highways, 86-678 (La.App. 3d Cir.6/27/1987), 512 So.2d 546, citing U.S. Fidelity & Guar. Co. v. State Through Dept. of Highways, 339 So.2d 780 (La.1976). The DOTD also cites Hessifer v. So. Equip., Inc., 416 So.2d 368 (La.App. 1st Cir.), writ denied, 420 So.2d 982 (La.1982), wherein the court held that the duty owed by the DOTD does not include the obligation to protect a plaintiff against harm which would have occurred but for the grossly negligent operation of an automobile by a plaintiff. In summation, the DOTD submits that Mr. Trippe was inattentive and disobeyed the flashing traffic signal and, as a result, pulled directly in the path of the 18-wheel-er, leading to the collision. It poignantly states “[t]he accident was solely [Mr. Trippe’s] fault.”
As stated by the DOTD, “the essential question [in this case] is did the jury have a reasonable factual basis to conclude in this case that the subject intersection did not pose an unreasonable risk of harm?” We conclude that such factual basis does exist. Kirk Gallien, the DOTD’s district traffic operations engineer, testified that his department had no notice or knowledge of any complaints with respect to the subject intersection.[7] Testimony further indicated that traffic was “much lighter” in |sthe area at 7:00 p.m. and that other patrons had little trouble with the traffic signal or intersection. In addition, Ms. Degges’ expert witness testified that he *393 was unaware of any (other) accidents at the site. Dr. Richard Robertson, a traffic engineer, testified that Mr. Trippe had approximately 25 to 35 seconds of “view” available to him (during which he could have clearly observed the flashing red light and assessed the traffic). Similarly, Marshall Lyles, an accident reconstruc-tionist, testified that the 18-wheeler was approximately 50 feet in front of the Trippe/Degges vehicle when the latter pulled into the intersection. He stated that the accident was caused “solely as a result of the inattentiveness or distraction of Mr. Trippe.”
In summary, we find that the record in the case sub judice supports the conclusion of the jury that it was Mr. Trippe’s negligence that caused this accident. While some evidence to the contrary may exist, we find no indication of manifest error sufficient to satisfy the burdens of Rosell, supra, Stobart, supra, or Reider, supra. Given the aforementioned standard of review and the testimony adduced by Dr. Robertson, Mr. Lyles and Mr. Gallien, we cannot say that reversible error is evidenced on this record.

CONCLUSION

For the foregoing reasons, the judgment of the trial court in favor of the Defendant/Appellee, the State of Louisiana, through the Department of Transportation and Development, is affirmed. Costs of this appeal are assessed to Plaintiff/Appellant Terri Degges.
AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, GASKINS, PEATROSS, DREW, and LOLLEY, JJ.
Rehearing denied.

. There is no dispute that Mr. Trippe was driving; Ms. Degges was in the passenger (front) seat and Joshua was in the back seat.

. The record indicates that the East Madison traffic control signal was supposed to switch (from ordinary sequence to red/yellow flashing sequence) at 9:15 p.m.; however, due to a DOTD paperwork error, it switched at 7:00 p.m., the exact moment of this accident. This is discussed at length, infra. It should be noted that the record indicates that Joshua Degges may have seen the flashing red light moments prior to the accident, suggesting that the signal had changed prior to Mr. Trippe entering East Madison.

. In Hutchins, supra, the "busy intersection” being referenced was a four lane highway with a 45 mph speed limit. In brief, Ms. Degges' attorney draws a parallel between the intersection in Hutchins, supra, and the one in the case sub judice, which was five lanes and had a speed limit of 45 mph.

. In brief, Ms. Degges enumerates a number of supporting cases, each fortifying her single assignment of error. Among them is Burge v. City of Hammond, 509 So.2d 151 (La.App. 1st Cir.1987), writ denied, 513 So.2d 285 (La.1987), in which the first circuit held that the law is clear that a driver's knowledge or lack of perception of the defective condition is not a defense to the DOTD's negligence. Similarly, in Melder v. State, Through Dept. of Highways, 512 So.2d 546 (La.App. 3d Cir.1987), the third circuit held that the DOTD is specifically charged with the safety of the motoring public and has the legal responsibility for operating and maintaining a traffic signal.

. The record indicates that at some earlier time, Mr. Trippe, age 73, had confessed concerns about his ability to drive particularly at night.

. See La. R.S. 32:56(B), La. R.S. 32:234(A)(1), (2) and La. R.S. 32:123(B).

. The record indicates that the traffic signal change went into effect about 25 months pri- or to the accident and the DOTD received no complaints about it up until that point.